[Civ. No. 67933. Second Dist., Div. Four. June 21, 1983.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
RICHARD RUSSELL CHAPPELL, Real Party in Interest.

COUNSEL

Robert H. Philibosian, District Attorney, Donald J. Kaplan and Richard W. Gerry, Deputy District Attorneys, for Petitioner.

No appearance for Respondent.

Joseph Ash and Harold S. Vites for Real Party in Interest.

OPINION

**WOODS, P. J.**—By this proceeding in mandate pursuant to Penal Code section 1538.5, subdivision (o), the People seek to vacate an order to the extent it grants a defense motion to suppress evidence. The court order suppressed the contents of envelopes seized from defendant's automobile and later opened at a police station.

The material facts, adduced at the hearing on the suppression motion, are not in dispute. On April 20, 1981, Thailand National Police intercepted seven envelopes mailed in Thailand bearing one of three Los Angeles addresses (none bearing defendant's name) and one of two Bangkok return addresses in similar handwriting. The envelopes are business size, white airmail envelopes with red and blue striped borders. The police discovered heroin in the envelopes and turned them over to the United States Drug Enforcement Agency (DEA) in Bangkok with advisement as to their contents. The DEA in Bangkok forwarded the envelopes to the DEA in Washington, D.C., which in turn forwarded the envelopes to the United States Customs Service in Los Angeles. The envelopes were there opened for the first time by United States authorities by an officer of the Customs Service on or about May 15, 1981, in the presence of Los Angeles Police Officer Engelhardt, who is an expert in the field of controlled substances. Each envelope was observed to contain a white powder which was chemically identified as heroin. Officer Engelhardt also observed that one envelope contained some 35 millimeter slides and tissue paper.

Three of the envelopes were resealed and released to the United States Postal Service on May 21, 1981, for controlled delivery under surveillance to 11100 Cumpston Street, Los Angeles. That same day the envelopes were delivered as addressed into two Cumpston Street business mailboxes at approximately 1:15 p.m. Officers observed defendant drive up in a Ford van and remove the envelopes from the mailboxes. He returned to his vehicle and placed the envelopes under the front seat. He walked back into one of the addressed buildings, without any of the envelopes, and after a short time returned to his vehicle and drove away.

Officer Engelhardt, who was in an unmarked vehicle, was informed by police radio of defendant's conduct and the description of his van. Officer Engelhardt began to follow defendant's automobile one block from the Cumpston address. Other officers had the house at 12331 Saticoy Street[1] under surveillance and observed defendant arrive there at approximately 2 p.m. Officer Engelhardt there saw defendant remove what he believed to be all three envelopes from under the front seat of the parked vehicle, place them in his pants pocket, and enter the house. Officer Engelhardt recognized the red and blue borders as similar to those on the envelopes opened by customs on May 15. Officer Engelhardt then left to obtain a search warrant. His affidavit requesting the warrant stated his belief that all three envelopes were located within the Saticoy residence.

The search warrant authorized the search of four locations for heroin: the Cumpston business address, the Saticoy house, another apartment building, and the seven intercepted envelopes from Thailand (identified therein by address and return address). The warrant did not restrict where the search of the envelopes could take place, but rather listed the envelopes themselves as a location to be searched.

After Officer Engelhardt returned with the search warrant at approximately 5 p.m., the officers approached the house and drew defendant and another male occupant outside by representing that the officers were utility workmen and that defendant's vehicle was in their way. The officers immediately arrested both men. The search warrant was then identified and shown to the men, and the officers made a lawful entry into the house pursuant to the warrant to search for heroin. They did not find any envelopes but found some white heroin, which resembled that previously observed in the intercepted envelopes, located in two small bottles. In a trash container Officer Engelhardt found the 35 millimeter film slides and the thin tissue paper which he had seen in one envelope at the Customs Service on May 15. The search of the house lasted until approximately 6 p.m.

---

[1]This was another address listed in the affidavit for search warrant.

Because the amount of heroin found in the house appeared to be the contents of only one of the envelopes, Officer Engelhardt returned outside to the defendant's vehicle. He looked through the front window of the vehicle and saw two partially covered white business envelopes on the floor between the front seats. The envelopes were seen to bear the same red and blue borders and Bangkok return addresses. He opened the locked vehicle with keys he obtained from defendant and retrieved the envelopes. Officer Engelhardt later opened the envelopes at Van Nuys police station "pursuant to the warrant" at a time he estimates to have been contemporaneous with the booking of defendant. Defendant testified at the Penal Code section 1538.5 hearing that the envelopes were "well hidden" under the seat of his vehicle before seizure, but the court expressly found that the envelopes were only partially covered and in plain view to the extent stated by Officer Engelhardt.

The superior court denied real party in interest's motion to quash the search warrant and thus refused to suppress the evidence found in the residence. With respect to the seizure of the envelopes found in the vehicle, the court ruled the seizure valid on the basis that the envelopes were in plain view and thus no search was conducted. However, relying on *People* v. *Riegler* (1981) 127 Cal.App.3d 317 [179 Cal.Rptr. 530], the court suppressed the contents of the envelopes on the grounds that the officers could not open them without having first obtained a new warrant.

Real party in interest has not challenged the trial court's denial of his motion to quash the search warrant and suppress the evidence found at the residence. Nor has he challenged the court's ruling that the envelopes in the vehicle were in plain view. Therefore, the only issue before this court is petitioner's contention that the court improperly suppressed the contents of the envelope. We agree with petitioner that the facts in *Riegler* are materially distinguishable from those in the instant case and that that decision is therefore not controlling.

In *Riegler,* a customs inspector opened certain envelopes arriving by international mails and discovered hashish. The envelopes were resealed and a controlled postal delivery was made to the addressee. Surveiling police had already obtained a search warrant authorizing them "to search the premises at 1130 W Street and any packages and wrappings *located therein* addressed to Michael and Selma Fortner." (*People* v. *Riegler, supra,* 127 Cal.App.3d at p. 320; italics added.) The officers saw an occupant take the delivered packages into the house. Shortly thereafter an automobile arrived and defendant got out and entered the house. In a half hour defendant left the house carrying the packages and drove off in his automobile. Officers followed the defendant's vehicle for some 2 hours and 100 miles before

stopping it and arresting the occupants. The packages were seized from the back seat immediately after the arrest but were not opened until five hours later at the police station.

The *Riegler* court concluded that an additional warrant was required before the packages found in the automobile could be opened, because the "warrant was restricted to the residence and any packages located therein." (*People* v. *Riegler, supra,* 127 Cal.App.3d at p. 326.) The facts in *Riegler* are deceptively similar to those in the case at bar. However, the warrant is different in one critical respect. The warrant we review authorized, not the search of a residence and any envelopes found therein, but rather the search of the envelopes themselves, without restriction as to geographic location.

Those cases explaining the purposes underlying the requirement of particularity of description suggest that the present search of the envelopes is not inconsistent with the requirement.

As stated in *Marron* v. *United States* (1927) 275 U.S. 192, 196 [72 L.Ed. 231, 237, 48 S.Ct. 74]: "The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant."

Here, the envelopes were described in the warrant with sufficient detail and precision as one of the places to be searched for contraband. Under these circumstances, no additional warrant authorizing their search was required. The envelopes were lawfully seized, and their search pursuant to warrant was perfectly valid.

Let a peremptory writ of mandate issue directing respondent to vacate that portion of its order of January 24, 1983, granting real party's motion to suppress the contents of the two envelopes seized from the automobile, and to make a new and different order denying suppression as to those items.

Amerian, J., and Ackerman, J.,* concurred.

The petition of real party in interest for a hearing by the Supreme Court was denied August 25, 1983.

---

*Assigned by the Chairperson of the Judicial Council.