[Crim. No. 4230. Fifth Dist. Dec. 30, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT LAWRENCE RIEGLER, Defendant and Appellant.

COUNSEL

Duane, Lyman & Seltzer, Duane & Lyman and Eugene Seltzer for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Roger E. Venturi and Ramon M. de la Guardia, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**FRANSON, Acting P. J.**—The United States Supreme Court granted respondent's petition for a writ of certiorari, vacated this court's previous opinion and remanded the matter for further consideration in light of *New York* v. *Belton* (1981) 453 U.S. 454 [69 L.Ed.2d 768, 101 S.Ct. 2860]. Pursuant to the high court's command, we have reconsidered the matter, and conclude the *Belton* rule permitting a warrantless search of the passenger compartment of an automobile and containers found therein when incidental to a lawful arrest, is inapplicable to this case. Accordingly, we again reverse the judgment.

The facts are these:

On November 8, 1977, a customs inspector at JFK Airport in New York City notified John Huber, a special agent with the Drug Enforcement Administration, that a detector dog had alerted the inspector to two packages sent from Germany and when the inspector opened them up he observed what he believed to be hashish. Chemical analysis confirmed the substance was hashish.

The packages were addressed to Michael and Selma Fortner, 1130 W Street, Merced, California.

The packages were resealed by the customs agent and Huber sent the packages to Patrick Dorn, a United States postal inspector in Fresno, who received them on November 21, 1977.

Dorn brought the packages to Merced and contacted a Lieutenant Moore who was in charge of specialized manpower assigned to crime

control (SMACC) in Merced County. Huber also had contacted Moore on November 21, 1977, and told him about the packages.

The plan was to have a controlled delivery, and on November 22, 1977, Agent Atkins with SMACC obtained a warrant to search the premises at 1130 W Street and any packages and wrappings located therein addressed to Michael and Selma Fortner.

On November 22, Lieutenant Moore and other agents took up surveillance at the Fortner residence. At approximately 1:30 p.m. Dorn gave the parcels to the regular mail carrier who delivered the parcels at approximately 1:40, and Michael Fortner took them into the house.

About 10 to 15 minutes after the delivery of the packages a red Volkswagen driven by appellant and with a passenger pulled into the driveway at the Fortner residence. A few minutes later appellant placed the packages in the back of the Volkswagen and drove away.

Lieutenant Moore testified that between 1:40 p.m. and 2:11 p.m., when appellant left with the packages, nothing prevented Moore from going into the residence to execute the warrant. Moore did not immediately serve the warrant because he wanted to wait for the occupants to have time to open the packages. He was also interested in where the hashish was going if it left the residence. He wanted to ascertain who else was involved in the case and whether he could arrest more people. He would follow suspects wherever they went, including on a plane.

After the Volkswagen left, the warrant was executed and served on Mike Fortner at 2:30 p.m., and the house searched, but nothing incriminating was found. Agent Austin overheard Michael Fortner on the phone say that a couple of packages came for Bob and "I gave them both to Bob."

The search warrant was restricted to the premises, structures, rooms and receptacles of the Fortner residence at 1130 W Street, Merced, and did not provide for the search of any vehicle or persons.

When appellant's Volkswagen left the Fortner residence, several SMACC agents including Moore, along with Postal Inspector Dorn, followed. Although several opportunities existed to stop the Volkswagen and detain the occupants, the officers chose not to do so until approximately 4:05 p.m. The vehicle was stopped in Contra Costa County

about 100 miles from the Fortner residence. The reason for the stop was the fear of losing surveillance in the East Bay traffic.

Appellant and his passenger exited the vehicle and were arrested, handcuffed and removed from the scene before the parcels were removed from the back seat of the Volkswagen. The packages were identified as being the same ones previously delivered to the Fortner residence. The arrestees were booked into a Contra Costa jail.

The packages were placed unopened into a police vehicle and taken back to the SMACC office in Merced where they were photographed, opened and found to contain hashish. The search of the packages was about five hours after they were seized from the Volkswagen. No search warrant was obtained before the opening. Moore testified that when he took the packages back from Contra Costa County to the Merced office, he had no fear that something would happen to the packages.

## DISCUSSION

In *New York* v. *Belton, supra,* 453 U.S. 454 [69 L.Ed.2d 768, 101 S.Ct. 2860], a New York state trooper driving alone in an unmarked car was passed by a speeding car. The trooper gave chase and forced the car to pull over. It soon became evident that none of the four occupants of the car owned the vehicle or was related to its owner. Meanwhile, the officer had smelled burning marijuana and had seen an envelope on the floor of the car marked "Supergold" which the officer associated with marijuana. The four men were directed to exit the vehicle and were arrested for possession of marijuana. The trooper patted the four occupants down and tried to split them up from each other so they could not be in physical contact. The suspects were all by the side of the car when the trooper then searched the interior of the car, found Belton's jacket, unzipped the pocket, and discovered cocaine therein which became the subject of the prosecution in the case (*New York* v. *Belton, supra,* 453 U.S. at pp. 455-457 [69 L.Ed.2d at p. 772, 101 S.Ct. at pp. 2861-2862]).

The United States Supreme Court reversed the New York Court of Appeal which had ordered suppression of the evidence on the theory that a "'warrantless search of the zippered pockets of an unaccessible jacket may not be upheld as a search incident to a lawful arrest where there is no longer any danger that the arrestee or a confederate might

gain access to the article.'" (*Id.*, 453 U.S. at p. 456 [69 L.Ed.2d at p. 772, 101 S.Ct. at p. 2862].)

Justice Stewart emphasized the need for a single, familiar standard as essential to the guidance of police officers who have only limited time and expertise to reflect on and balance the social and individual interests involved in the specific circumstances they confront. (*Id.*, 453 U.S. at p. 458 [69 L.Ed.2d at pp. 773-774, 101 S.Ct. at p. 2863].) In *United States* v. *Robinson* (1973) 414 U.S. 218, 236 [38 L.Ed.2d 427, 441, 94 S.Ct. 467], according to Justice Stewart, the court attempted to articulate a straightforward rule that could be easily applied and predictably enforced. (*New York* v. *Belton, supra*, 453 U.S. at p. 459 [69 L.Ed.2d at pp. 772-773, 101 S.Ct. at p. 2862].) However, no straightforward rule emerged following *Robinson* in respect to the question of the proper scope of the search of the interior of an automobile incident to a lawful custodial arrest of its occupants. (*Ibid.*) Therefore, *Belton*, relying on the principles of *Chimel* v. *California* (1969) 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034], held that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile. (*New York* v. *Belton, supra*, 453 U.S. at p. 460 [69 L.Ed.2d at pp. 774-775, 101 S.Ct. at p. 2864].) While conducting the search incident to an arrest, the police may also examine the contents of any containers found within the passenger compartment because if the passenger compartment is within the reach of the arrestee, so also are the containers that are therein.[1] (*Ibid.*)

In the instant case the packages in question were sitting on the back seat of the Volkswagen. Thus, under *Belton* the police had the right to seize and search those packages incident to the arrest of the occupants of the Volkswagen. However, a problem arises because the officers did not open the packages at the time of the seizure and the arrest; rather, the officers delayed the opening of the packages until some four to five hours later after they had been seized. As we shall explain, this delay is fatal to the officers' right to open the packages without a warrant.

---

[1] In footnote 4 of *Belton* 453 U.S. at page 460 [69 L.Ed.2d at page 775, 101 S.Ct. at page 2864], the Supreme Court defined container as follows. "'Container' here denotes any object capable of holding another object. It thus includes closed or open glove compartments, consoles, or other receptacles located anywhere within the passenger compartment, as well as luggage, *boxes*, bags, clothing, and the like. Our holding encompasses only the interior of the passenger compartment of an automobile and does not encompass the trunk." (Italics added.)

*Belton* carefully distinguished *United States* v. *Chadwick* (1977) 433 U.S. 1 [53 L.Ed.2d 538, 97 S.Ct. 2476] and *Arkansas* v. *Sanders* (1979) 442 U.S. 753 [61 L.Ed.2d 235, 99 S.Ct. 2586], relied on by the New York Court of Appeal in holding the search constitutionally invalid, on the ground that neither case involved a search incident to a lawful custodial arrest. "As the Court pointed out in the *Chadwick* case, 'Here the search was conducted more than an hour after federal agents had gained exclusive control of the footlocker and long after respondents were securely in custody; the search therefore cannot be viewed as incidental to the arrest or as justified by any exigency.' [Citation.] And in the *Sanders* case, the Court explicitly stated that it did not 'consider the constitutionality of searches of luggage incident to the arrest of its possessor. (See, e.g., *United States* v. *Robinson*, 414 U.S. 218 ... (1973). The State has not argued that respondent's suitcase was searched incident to his arrest and it appears that the bag was not within his "immediate control" at the time of the search.'" (*New York* v. *Belton, supra*, 453 U.S. 454, at p. 462 [69 L.Ed.2d 768 at p. 776, 101 S.Ct. 2860 at p. 2865].)

██ *Belton* clearly implies an automobile container search must occur *immediately* to be considered as incident to the arrest. "It is not questioned that the respondent was the subject of a lawful custodial arrest.... The search of the respondent's jacket followed immediately upon that arrest.... The search of the jacket, therefore, was a search incident to a lawful custodial arrest...." (*Id.*, 453 U.S. at p. 462 [69 L.Ed.2d at p. 776, 101 S.Ct. at p. 2865].)[2]

---

[2]Several other United States Supreme Court cases have reflected on the meaning of contemporaneous. In *Preston* v. *United States* (1964) 376 U.S. 364, 367-368 [11 L.Ed.2d 777, 780-781, 84 S.Ct. 881], which involved the search of a car rather than its contents, the court declared: "The rule allowing contemporaneous searches is justified, for example, by the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the need to prevent the destruction of evidence of the crime—things which might easily happen where the weapon or evidence is on the accused's person or under his immediate control. But these justifications are absent where a search is remote in time or place from the arrest. Once an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest. [Citation.] Here, we may assume, as the Government urges, that, either because the arrests were valid or because the police had probable cause to think the car stolen, the police had the right to search the car when they first came on the scene. But this does not decide the question of the reasonableness of a search at a later time and at another place. See *Stoner* v. *California, post*, p. 483. The search of the car was not undertaken until petitioner and his companions had been arrested and taken in custody to the police station and the car had been towed to the garage. At this point there was no danger that any of the men arrested could have used any weapons in the car or could have destroyed any evidence of a crime.... We think that the search was too remote in time or place to have been made as incidental to the

The California Supreme Court has also indicated the warrantless search of containers found in automobiles must be contemporaneous with the arrest. In *People* v. *Minjares* (1979) 24 Cal.3d 410, 420-421 [153 Cal.Rptr. 224, 591 P.2d 514], the court states: "The cardinal principle of the Fourth Amendment is that a warrant is required *unless* some grave emergency can be shown that necessitates an immediate search without a warrant. [Citation.] Further, 'a warrantless search must be "strictly circumscribed by the exigencies which justify its initiation."' [Citation.] When those circumstances cease to exist, the exception also ceases to exist and a warrant must be obtained. This is the rationale of *Chadwick*: 'Even though on this record the issuance of a warrant by a judicial officer was reasonably predictable, a line must be drawn. In our view, *when no exigency is shown to support the need for an immediate search, the Warrant Clause places a line at the point where the property to be searched comes under the exclusive dominion of the police authority.*' [Citation, italics added.] To hold otherwise would exalt the exceptions above the rule." (Fn. omitted, see also *People* v. *Pace* (1979) 92 Cal.App.3d 199, 203-204 [154 Cal.Rptr. 811].)

From the above, we conclude *Belton* permits the police to search the containers found in the passenger compartment of an automobile incident to the arrest of the occupants only when the search is contemporaneous with the arrest and when the container to be searched is *not* in exclusive police control. Only in this context do exigent circumstances exist that justify the right to engage in a warrantless search. Such a rule accords with principles of *Chimel* v. *California, supra*, 395 U.S. 752.

■ We decline the Attorney General's invitation to expand *Belton* to permit a search of the containers five hours after their seizure. A strong public policy requires police officers to search containers at the time they are seized from the automobile if physically possible. The

---

arrest and conclude, therefore, that the search of the car without a warrant failed to meet the test of reasonableness under the Fourth Amendment, rendering the evidence obtained as a result of the search inadmissible."

In *Chambers* v. *Maroney* (1970) 399 U.S. 42, 47 [26 L.Ed.2d 419, 426, 90 S.Ct. 1975, 1979], which also involved the search of a car, the court cited *Preston* and stated: "Even so, the search that produced the incriminating evidence was made at the police station some time after the arrest and cannot be justified as a search incident to an arrest: 'Once an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest.' [Citation.] *Dyke* v. *Taylor Implement Mfg. Co.*, 391 U.S. 216 (1968), is to the same effect; the reasons that have been thought sufficient to justify warrantless searches carried out in connection with an arrest no longer obtain when the accused is safely in custody at the station house."

present case is a good illustration. Appellant and his friend were arrested and booked into the Contra Costa jail on the basis of the contraband which the officers *assumed* to be in the packages. Although not likely under the particular facts of this case, it was entirely *possible* that the packages did not contain contraband since they were inside the Fortner home for over one-half hour without any police contact before being placed in the Volkswagen. It was only when the packages were opened that the officers could verify absolutely their belief as to the contents of the packages which was based on multiple (quadruple) hearsay going back to the New York customs search several weeks earlier.[3]

Having decided *Belton* does not validate the warrantless search of the packages in the instant case, we reiterate with a few additional comments the opinion rendered by our late colleague Justice George Hopper published in 111 Cal.App.3d 580 [168 Cal.Rptr. 816]. (See *People* v. *Krivda* (1971) 5 Cal.3d 357 [96 Cal.Rptr. 62, 486 P.2d 1262], reiterated in (1973) 8 Cal.3d 623 [105 Cal.Rptr. 521, 504 P.2d 457].)

We reject for two reasons the argument that appellant had no reasonable expectation of privacy in the packages because the packages had been subject to an earlier customs search. First, as explained by the United States Supreme Court in *Walter* v. *United States* (1980) 447 U.S. 649, 659 [65 L.Ed.2d 410, 419, 100 S.Ct. 2395, 2402, fn. 12 (lead opn.)]: "... it is difficult to understand how petitioners' subjective expectation of privacy could have been altered in any way by subsequent events of which they were obviously unaware." Second, even assuming appellant had a lesser expectation of privacy in the packages because they were opened in New York, the diminution of privacy ended when the packages were delivered by the police to the Merced address. The police fully understood this as evidenced by the fact they obtained a search warrant for the packages at the Merced address.

Once the packages were delivered to the Fortner residence, they were no longer under the dominion of the government. (*People* v. *Whyte* (1979) 90 Cal.App.3d 235, 243 [152 Cal.Rptr. 280].) As noted in *Whyte* in every California "controlled delivery" case "a judicially autho-

---

[3]We assume the officers' probable cause for the arrest of the Volkswagen's occupants arose solely from their possession of the packages. If the packages had not contained contraband, then appellant and his companion should not have been arrested. A contemporaneous search of the packages at the time they were seized would prevent such an occurrence.

rized warrant was obtained because the agents realized they were not carrying out a customs search. [Citations.]"

Nor can we accept the argument the search warrant for the Fortner residence somehow obviated the need for an additional warrant to open the packages after they were seized from the appellant's auto. As we have noted, the warrant was restricted to the residence and any packages located therein. Once appellant took the packages from the Fortner residence and placed them in the back seat of his automobile, the packages were no longer subject to the warrant.

The key to this case is appellant's expectation of privacy in the packages as they rested on the back seat of his automobile. The packages were sealed and wrapped tightly. Nothing in their appearance indicated their contents. Appellant had no knowledge of the prior customs search or that a warrant had been issued to seize the packages at the Merced address. Thus, appellant manifested a reasonable expectation of privacy in the packages as a matter of law.[4]

Finally, we cannot accept respondent's argument that the police could search the seized packages without a warrant because "their contents could be inferred from their outward appearance." (*Arkansas* v. *Sanders, supra*, 442 U.S. 753 at pp. 764-765, fn. 13 [61 L.Ed.2d at p. 245, 99 S.Ct. at p. 2593].)[5] Nothing in the appearance of the packages in question would indicate they contained contraband.

---

[4]Justice Powell in his concurring opinion in *Robbins* v. *California* (1981) 453 U.S. 420, 434, footnote 3 [69 L.Ed.2d 744, 755-756, 101 S.Ct. 2841, 2850], decided the same day as *Belton*, points out that "When confronted with the claim that police should have obtained a warrant before searching an ambiguous container, a court should conduct a hearing to determine whether the defendant had manifested a reasonable expectation of privacy in the contents of the container. [Citation.] Relevant to such an inquiry should be the size, shape, material, and condition of the exterior, the context within which it is discovered, and whether the possessor had taken some significant precaution, such as locking, securely sealing or binding the container, that indicates a desire to prevent the contents from being displayed upon simple mischance....

"In this case, petitioner, by securely wrapping and sealing his package, had manifested a desire that the public not casually observe the contents. [Citation.] Our society's traditional respect for the privacy of locked or sealed containers confirms the reasonableness of this expectation. (See *Ex parte Jackson*, 96 U.S. (6 Otto) 727, 733, 24 L.Ed. 877 (1878) (warrant required for postal inspectors to open sealed packages sent through mail).) [Citation.]"

[5]The footnote reads: "Not all containers in packages found by police during the course of a search will deserve the full protection of the Fourth Amendment. *Thus, some containers (for example a kit of burglar tools or a gun case) by their very nature cannot support any reasonable expectation of privacy because their contents can be in-*

We acknowledge our decision may seem inexplicable at first glance. The officers believed that hashish of substantial value was in appellant's possession because of the prior customs search. The officers had obtained a search warrant to seize the packages at the Fortner residence. Nonetheless, the contraband must be suppressed because the officers failed to execute the warrant at the residence and failed to obtain another warrant to open the packages after they were seized from appellant's automobile. Having the right under *Belton* to open the packages when appellant was arrested, the question naturally arises: why should the officers be required to get another warrant to open the packages at their later convenience? The answer, of course, is that the Constitution, as interpreted by the high courts of our land, mandates a warrant be obtained unless there are exigent circumstances. Probable cause, although it may be overwhelming, is not enough; it is a neutral magistrate and *not* the police who determines if private packages may be searched.

Officers are required to play by the rules. They knew the search warrant was restricted to the Merced address. Once they failed to spring their trap by executing the warrant at the residence, thereby permitting their quarry and the packages to leave that location, the rules changed. Appellant's reasonable expectation of privacy in the packages became paramount, and any subsequent seizure of the packages was subject to the severe constraints placed on warrantless searches. Absent exigent circumstances, a warrant must be obtained to search the containers when placed under the exclusive control of an officer. (*United States* v. *Chadwick, supra,* 433 U.S. 1; *Arkansas* v. *Sanders, supra,* 442 U.S. 753; *People* v. *Minjares* (1979) 24 Cal.3d 410, 423 [153 Cal.Rptr. 224, 591 P.2d 514]; *People* v. *Dalton* (1979) 24 Cal.3d 850, 856 [157 Cal.Rptr. 497, 598 P.2d 467].)

Because *New York* v. *Belton, supra,* 453 U.S. 454 [69 L.Ed.2d 768, 101 S.Ct. 2860], is inapplicable to the facts of this case, we need not address appellant's alternate contention that the search was invalid under article I, section 13 of the California Constitution.

The judgment is reversed.

---

*ferred from their outward appearance.* Similarly, in some cases the contents of a package will be open to 'plain view,' thereby obviating the need for a warrant. [Citation.] There will be difficulties in determining which parcels taken from an automobile require a warrant for their search and which do not." (Italics added.)

Stone (C. V.), J.,* concurred.

**ANDREEN, J.**—I respectfully dissent.

When *Belton*[1] is read in the context of the instant case, one is compelled to the dreary conclusion that the high court either paid no attention to the facts of the latter or has used this remand as an opaque precursor of fundamental change.[2]

In an attempt to understand the remand, it may be desirable to review the reasoning behind the special rules involving automobile searches. One of the two reasons for the distinction between search of automobiles and other private property is that the configuration, use and regulation of automobiles dilutes the reasonable expectation of privacy that normally exists in reference to other species of property. (See *Arkansas v. Sanders* (1979) 442 U.S. 753, 760-761 [61 L.Ed.2d 235, 242-243, 99 S.Ct. 2586, 2591].)

What was the expectation of privacy in the two packages in the instant case? The material was sent through international mails; the markings on the packages announced that fact. It went through customs, and thus was subject to search. I cannot follow the argument of the majority that appellant had a greater expectation of privacy in the packages than the addressee.[3] He was involved in a shipment of two packages from Germany to the ultimate destination of the Volkswagen. As such, he benefited from that aspect of the transportation which moved the packages through JFK Airport. A person engaged in such an enterprise accepts the burdens as well as the benefits of the transaction. (See, generally, *Almeida-Sanchez v. United States* (1973) 413 U.S. 266, 271-272 [37 L.Ed.2d 596, 601-602, 93 S.Ct. 2535], which used similar language in describing businesses subject to administrative inspection.)

---

*Assigned by the Chairperson of the Judicial Council.

[1]*New York v. Belton* (1981) 453 U.S. 454 [69 L.Ed.2d 768, 101 S.Ct. 2860].

[2]Change may well be indicated for this area. But clarification, not obfuscation, is needed for the lower courts.

[3]Contrary to the majority's assertion, the fact that the police secured a search warrant for the Merced residence does not evince a law enforcement opinion that a privacy interest sprang into existence upon delivery to the house. It simply manifests an understanding by competent officers that in order to get into the house they would need a search warrant.

There can be no doubt that the packages in the back seat of the Volkswagen were the same as went through customs search. The majority argues that it was possible that the contents of the packages were not hashish because they had been inside the Fortner home for "over one-half hour without any police contact." But the search warrant was for packages addressed to Michael and Selma Fortner with a certain return address. The return on the search warrant itemizes two packages addressed to Selma Fortner, without mention of the return address. However, during testimony at the preliminary hearing, Lieutenant Moore testified that he had seen the two packages earlier. This could only refer to the period of time before they were given to the mail carrier for delivery to the house. There was no possibility of substitution of packages or contents.

These packages advertised the fact that they had been sent through international mails. I would argue that there was no legitimate expectation of privacy in them. This, coupled with the concept in *Belton* that once a custodial arrest is made there is a justifiable infringement in any privacy interest that the arrestee may have, makes a claim of a privacy interest ludicrous. The expectation of privacy is at the heart of the application of the Fourth Amendment. (*Smith* v. *Maryland* (1979) 442 U.S. 735 [61 L.Ed.2d 220, 99 S.Ct. 2577].)

As an alternative reason for affirming the trial court, it appears to me that there was really no search at the police station. The search had taken place at JFK Airport. At all times afterward the hashish was in plain view. What occurred at the police station was simply an inventory of known property.

Yet another reason justifying affirmance is the concept of constructive possession discussed in my concurring opinion filed the first time we considered this case. (*People* v. *Riegler* (1980) 111 Cal.App.3d 580, 589-590 [168 Cal.Rptr. 816].)

I would affirm the judgment of the trial court.

A petition for a rehearing was denied January 21, 1982, and respondent's petition for a hearing by the Supreme Court was denied March 17, 1982. Richardson, J., and Kaus, J., were of the opinion that the petition should be granted.