[No. F003078. Fifth Dist. Sept. 7, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT LAWRENCE RIEGLER, Defendant and Appellant.

COUNSEL

Duane, Lyman & Seltzer, Eugene Seltzer and Ross E. Cheit for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Willard F. Jones, Ramon De La Guardia and Joel Carey, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

FRANSON, J.—On July 6, 1983, the Supreme Court of the United States granted respondent's petition for a writ of certiorari, vacated this court's opinion in *People* v. *Riegler* (1981) 127 Cal.App.3d 317 [179 Cal.Rptr. 530] and remanded for further consideration in light of *Illinois* v. *Andreas* (1983) 463 U.S. 765 [77 L.Ed.2d 1003, 103 S.Ct. 3319].

Pursuant to the high court's command, we have reconsidered this case in light of the principles articulated in *Illinois* v. *Andreas, supra,* 463

U.S. 765 [77 L.Ed.2d 1003, 103 S.Ct. 3319] and conclude that if *Andreas* were to be applied to this case on appeal, it would involve a new theory grounded on a disputed factual situation neither asserted nor litigated below. Since this would deprive appellant of the opportunity to present evidence or to cross-examine on the essential factual issues, we must disregard the new theory in our review of this case. (*People* v. *Superior Court (Simon)* (1972) 7 Cal.3d 186, 198-199 [101 Cal.Rptr. 837, 496 P.2d 1205]; *People* v. *Miller* (1972) 7 Cal.3d 219, 227 [101 Cal.Rptr. 860, 496 P.2d 1228]; *Mestas* v. *Superior Court* (1972) 7 Cal.3d 537 [102 Cal.Rptr. 729, 498 P.2d 977].) This conclusion is a matter of state law.

We also decline to remand the case for a new suppression hearing on the questions presented by *Andreas*. Accordingly, we again reverse the judgment.

## THE FACTS

On November 8, 1977, customs agents at the John F. Kennedy Airport in New York City opened two cardboard boxes wrapped in brown paper which had arrived from Germany. The packages were addressed to Michael and Selma Fortner, 1130 W Street, Merced, California, and were found to contain stereo speakers, glassware and a substantial amount of hashish. The packages were rewrapped and resealed by the customs agents and forwarded to United States Postal Inspector Dorn in Fresno, California. On November 22, 1977, Dorn took the packages to Merced. After conferring with Merced County law enforcement officials, who obtained a search warrant for the residence at 1130 W Street, Merced, Dorn gave the packages to a regular mail carrier for a "controlled delivery" to the described residence. The packages were delivered to Michael Fortner at his residence at approximately 1:40 p.m. on November 22. Fortner took the packages into his house.

Instead of executing the search warrant at this point, the officers decided to keep the residence under surveillance in the hope of apprehending additional suspects.

About 15 minutes after delivery of the packages, a red Volkswagen driven by appellant and with a passenger drove up to the Fortner residence. Appellant went into the house and came out about 15 minutes later with the packages. Appellant placed the packages in the backseat of the Volkswagen and drove away. Shortly thereafter, the house was searched pursuant to the warrant, and no contraband was found.

Meanwhile, other officers followed appellant in the Volkswagen as he drove north to the bay area. Appellant was followed for about two hours

until the police stopped him because they thought they would lose him in the heavy traffic. Appellant and his passenger were arrested on charges of transporting and possessing contraband for sale. The police then seized the two packages from the Volkswagen and placed them in their police car. According to the arresting officers, when the packages were seized they were wrapped in brown paper and tied with string. No other description of the packages or their wrappings was given by the officers. The police returned to Merced where they opened the packages about 9 to 9:30 that night without a warrant.

Appellant does not contest the seizure of the packages from the Volkswagen but contends they could only be searched pursuant to a valid warrant. Since the warrant that was issued was directed only to the Fortner residence, it could not authorize the search of the packages at another location many hours later. We held in *People* v. *Riegler, supra,* 127 Cal.App.3d 317 that the warrantless opening of the boxes seven hours after their "controlled delivery" to the Fortner residence and about five hours after their seizure from appellant was unlawful and ordered the suppression of the contraband.

## DISCUSSION

California courts have strictly barred the prosecution from introducing new theories justifying a search on appeal when failure to assert that theory below deprives the defense of an opportunity to produce evidence or to cross-examine on the relevant facts. (*People* v. *Superior Court (Simon), supra,* 7 Cal.3d 186, 198-199, *People* v. *Miller, supra,* 7 Cal.3d 219, 227; *Mestas* v. *Superior Court, supra,* 7 Cal.3d 537, 542-543.) The rule barring such new theories applies to those invented by reviewing courts, as well as the prosecuting authority. (*Mestas* v. *Superior Court, supra,* 7 Cal.3d 537 at p. 542.)

*Illinois* v. *Andreas, supra,* 463 U.S. 765 [77 L.Ed.2d 1003, 103 S.Ct. 3319], decided July 5, 1983, adopted a new standard for "controlled deliveries" after contraband is discovered in transit by customs officers. Under *Andreas,* reopening a delivered container is not a search subject to Fourth Amendment scrutiny even when the police lose sight of the container *provided* there is no "substantial likelihood that the contents of the container have been changed during the gap in surveillance." (*Id.,* at pp. 773 [77 L.Ed.2d at p. 1011, 103 S.Ct. at pp. 3324-3325].)

In this case, the packages were outside the officers' surveillance for about 30 minutes in the Fortner house and during some of the 2 hours the Volkswagen was on the road before the packages were seized. Although the officers said the packages were wrapped with paper and tied with string when

they were taken from the Volkswagen, the record is otherwise silent as to the condition of the packages or their wrappings when they were seized or when they were delivered to the Fortner residence. The record indicates that the customs officers had "resealed" the packages in New York before they were forwarded to Inspector Dorn. Whether this was by adhesive tape with or without string would be probative on the question whether the packages were opened by the Fortners or appellant after the packages were delivered to the Fortner residence.

Appellant argued below that under *United States* v. *Chadwick* (1977) 433 U.S. 1 [53 L.Ed.2d 538, 97 S.Ct. 2476] and *People* v. *Minjares* (1979) 24 Cal.3d 410 [153 Cal.Rptr. 224, 591 P.2d 514], he had a reasonable expectation of privacy in the packages because they were closed containers; hence, a search warrant was necessary before the packages could be opened at the police station. Although the prosecutor argued that appellant had no expectation of privacy in the packages because they had been opened by the customs officers, he never suggested that the reopening of the packages by the police after they were seized from appellant was not a search even though the packages had been out of the officers' sight while they were in the Fortner residence. It was never suggested by either party below nor is there any indication that the trial court considered the possibility that the packages had been opened at the Fortner house or while in transit in the Volkswagen.

 If the restricted privacy theory of *Illinois* v. *Andreas, supra,* 463 U.S. 765 [77 L.Ed.2d 1003, 103 S.Ct. 3319] and the question of the "substantial likelihood" that the packages had not been opened during the gap in surveillance had been asserted by the prosecutor below, appellant would have had the opportunity of cross-examining Dorn as to the appearance and condition of the packages when he received them from the customs agents in New York; he could also have examined Dorn and the other officers as to the appearance and condition of the packages and their wrappings when they delivered to the Fortner residence and when they were seized from the Volkswagen. Such examination might have demonstrated that the packages had been opened either by the Fortners or by appellant while the packages were in the residence or while they were in transit in the Volkswagen.

We recognize that in formulating the controlled delivery rule the high court based the privacy limitation on whether there is a substantial likelihood that the contents of the container were "changed" during the gap in surveillance. (*Andreas, supra,* 463 U.S. at p. 765 [77 L.Ed.2d at p. 1009-1011, 103 S.Ct. at pp. 3322-3325].) Logically, however, the court's reasoning would extend to merely opening the packages to verify their contents; if this were done and the packages were then resealed, a new Fourth

Amendment privacy expectation would arise independent of any initial privacy expectation at the time of shipment.

Respondent argues that if we reject the application of *Andreas* on the present record, we should nevertheless remand the case for a new hearing where evidence can be presented on the question of whether the packages were opened after their delivery to the Fortner residence and before seizure by the police. This would afford appellant all of the procedural due process rights of evidence presentation and cross-examination on the disputed factual issues required by *Andreas*.

The problem with a remand, however, is that it would involve the retroactive application of a new rule or standard to events which occurred almost seven years ago. *People* v. *Miller, supra,* 7 Cal.3d 219 and *Mestas* v. *Superior Court, supra,* 7 Cal.3d 537 both rejected the theories presented below to justify searches and indicate that others might be valid. But neither case allowed the prosecution to go back and try again with the new theory. (*Miller, supra,* at p. 227; *Mestas, supra,* at p. 543.)

Under the law in effect at the time of the search, appellant had a constitutional right of privacy in the contents of the packages even though they previously had been opened by customs agents in New York. (*United States* v. *Chadwick, supra,* 433 U.S. 1; *Arkansas* v. *Sanders* (1979) 442 U.S. 753 [61 L.Ed.2d 235, 99 S.Ct. 2586]; *People* v. *Minjares, supra,* 24 Cal.3d 410; *People* v. *Dalton* (1979) 24 Cal.3d 850 [157 Cal.Rptr. 497, 598 P.2d 467]; see also *People* v. *Riegler* (1980) 111 Cal.App.3d 580 [168 Cal.Rptr. 816]; *People* v. *Riegler, supra,* 127 Cal.App.3d 317.) As was stated in *Walter* v. *United States* (1980) 447 U.S. 649, 658, footnote 12 [65 L.Ed.2d 410, 419, 100 S.Ct. 2395]: ". . . it is difficult to understand how [the shipper's] expectation of privacy could have been altered in any way by subsequent events of which they were obviously unaware." Thus, a search warrant was needed in 1977 before the police could seize the packages after the controlled delivery. This obviously was the very reason the police obtained the warrant for the Fortner residence.

In deciding whether a new appellate rule or standard may be applied retroactively to cases not yet decided on appeal, several factors must be considered, the most significant being the purpose of the new judicial decision. (*People* v. *Garcia* (1984) 36 Cal.3d 539, 549 [205 Cal.Rptr. 265, 684 P.2d 826].) The purpose of *Andreas* is to restrict the Fourth Amendment privacy rights of owners of closed shipping containers lawfully opened by customs or other governmental agents before delivery. Thus, it can be argued that *Andreas* enhances the accuracy of the factfinding process as to the defendant's guilt by *limiting the exclusionary rule* and should be

applied retroactively. (Cf. *People* v. *Kaanehe* (1977) 19 Cal.3d 1, 10 [136 Cal.Rptr. 409, 559 P.2d 1028].)

 Although the United States Supreme Court does not speak in *Andreas* to its retroactivity, its remand of the present case with directions to reconsider it in light of *Andreas* strongly implies that the high court considers *Andreas* to be retroactive, i.e., that it should apply to any appropriate case in which a final judgment has not been entered. Hence, we will assume for purposes of our discussion that *Andreas* may be given retroactive effect. The ultimate question, however, is: should it be given such an effect in the present case? We think not.

Witnesses' recollections become dimmed by the passage of time. It would be quite remarkable if any officer could now testify with any degree of certainty as to the disputed factual questions presented by *Andreas,* i.e., whether the packages and their wrappings had been altered between the time of their delivery to the Fortner residence and their seizure from the Volkswagen. The record does indicate that the cardboard boxes and their wrappings were placed in evidence; hence, it might be possible to determine if the wrappings had been broken after resealing by the customs agents. But were they broken by the police during the search after the packages were seized or were they broken by Fortner or appellant inside the Fortner residence or in the Volkswagen before the seizure? Although the Fortners might be called by the prosecution to testify as to whether the packages were opened while they were in their house, we can only speculate as to what their answers might be. So, too, with respect to any testimony by appellant on the question if he should choose to testify on remand.

Since this was a warrantless search, the burden would be on the prosecution to prove there was no substantial likelihood that the packages had been opened after their delivery to the Fortner residence. (*Illinois* v. *Andreas, supra,* 463 U.S. 765 [77 L.Ed.2d 1003, 103 S.Ct. 3319].) The burden would be difficult to meet under the unusual circumstances of this case.

There comes a time not only in the interest of protecting a defendant's due process rights, but in the interest of judicial economy when all factual disputes should be laid to rest. If the police had properly executed the search warrant when the packages were delivered to the Fortner residence or, at the latest, when appellant emerged from the residence with the packages in hand, the search would have been upheld long ago. Having failed to do so, we decline to give the prosecution another chance at this late date to pull its chestnuts out of the fire.

The judgment is reversed.

Hanson (P. D.) J., and Ardaiz, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.