[No. A020291. First Dist., Div. Four. Oct. 30, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
ABDUR RAHMAN SALIH, Defendant and Appellant.

COUNSEL

Elizabeth Sapanai for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Ronald E. Niver and Dane R. Gillette, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

CHANNELL, J.—Following pretrial motions pursuant to Penal Code sections 1538.5 and 995,[1] appellant pled guilty to possession for sale of heroin (Health & Saf. Code, § 11351) and admitted possessing more than one-half ounce of heroin. (§ 1203.07, subd. (a)(1).)[2] He was sentenced to state pris-

---

[1]Unless otherwise stated, all statutory references are to the Penal Code.

[2]Effective January 1, 1983, after the instant offense, the relevant quantity was changed from "one-half ounce" to "14.25 grams." (Stats. 1983, ch. 223, § 5.)

on for a lower term of two years. A timely notice of appeal was filed. (§ 1538.5, subd. (m).)

We are called upon to decide whether the following acts by government agents were lawful: (1) the warrantless installation and monitoring of a radio transmitting device placed in a mail parcel lawfully opened by a United States postal inspector, and (2) the subsequent reopening of the package without a warrant at a police station after the package had been removed from appellant's car. Following decisions by the United States Supreme Court, we conclude that no constitutional rights of appellant were violated.

## I. FACTS

In early December 1981, United States Postal Inspector William Halonen was informed by customs officials at Los Angeles International Airport that, after being alerted by a narcotics-sniffing dog, they had opened a parcel mailed from Thailand and found in it a white powder which tested positive for the presence of heroin. The parcel was addressed to "House of - - -, [sic] 3402 Kerner Street, San Rafael, California 94901, U.S.A." Customs officials closed the package and forwarded it to Halonen in San Francisco, so he could arrange a controlled delivery.[3]

On December 4, 1981, Halonen obtained a federal search warrant, authorizing him to open and search the mail parcel. On opening the parcel, Halonen found a plastic bag filled with white powder, identified by a forensic chemist as 41 grams of 95 percent pure heroin.[4]

Halonen repackaged and rewrapped the mail parcel. In doing so, he installed a small directional radio transmitter device, or "beeper," in the package lining. This device was designed to transmit a beeping signal every three seconds. It could be heard for an optimum distance of 300-400 feet. While the listener could determine it was within a certain distance, one

---

[3]Describing controlled deliveries, the United States Supreme Court recently stated: "The lawful discovery by common carriers or customs officers of contraband in transit presents law enforcement authorities with an opportunity to identify and prosecute the person or persons responsible for the movement of the contraband. To accomplish this, the police, rather than simply seizing the contraband and destroying it, make a so-called controlled delivery of the container to its consignee, allowing the container to continue its journey to the destination contemplated by the parties. The person dealing in the contraband can then be identified upon taking possession of and asserting dominion over the container." (Fns. omitted.) (*Illinois* v. *Andreas* (1983) 463 U.S. 765, 769 [77 L.Ed.2d 1003, 1009, 103 S.Ct. 3319, 3322-3323].)

[4]There was expert testimony that heroin sold on the street is usually 4 to 6 percent pure. The wholesale value ranges from $500 to $800 per gram, or $20,000 to $30,000 for the amount herein. The retail street value was estimated to be 20 to 40 times the wholesale value. Thus, the street value in this case may have exceeded $400,000.

would not know the direction from which it came, and its location could only be approximated. The package was also rigged with a thin wire which, when opened, would cause the device to increase its beeps to 10 per second. Although the federal search warrant authorized the mail parcel to be opened and searched, it did not expressly authorize the installation or use of any electronic devices.

The controlled delivery was scheduled for December 9, 1981. Shortly before 10 a.m. on that date, the parcel was given to the local mail carrier for delivery to the Kerner Street address. Meanwhile, Halonen and several federal and local law enforcement officers went to the vicinity of the Kerner Street address to set up surveillance. As the mailman approached within a block of the house, Halonen was able to monitor the beeping signals. The mailman placed the package into the mailbox at 3402 Kerner. Within minutes, two men came out of the house and started to enter a car. One noticed the mail in the mailbox, and then disappeared for three to four minutes with the package. He returned to the car and both men left. They returned about 45 minutes later. During their absence, Halonen continued to hear the beeper.

At approximately 11 a.m., appellant drove up in an orange Datsun and entered the house. About 20 minutes later, he came out with a box and briefly entered the passenger side of the vehicle. Appellant then went back to the house, and returned with what appeared to be a brown paper bag in his hand. He got into the car and drove away. As he departed, the sound of the beeping signal faded away. Halonen immediately radioed the other officers in the area that the beeping had stopped and that the mail parcel was probably in the departing Datsun. They were told to stop the car.

Police officers followed and stopped appellant's car. The package was observed on the front seat next to a nine-inch butcher knife. Appellant was placed under arrest and turned over to federal agents. About an hour later, the arresting officer gave the unopened package to a supervising officer who, in turn, took it to the police station. At the police station, Investigator Fred Castillo removed the brown outer wrapping from the package for fingerprint analysis. The plastic bag containing the white powder was removed and retained as evidence.

## II. Installation and Monitoring of Beeper Device

### A. *Initial Opening of Mail Parcel*

 Appellant contends the warrantless installation and use of the electronic tracking device was an unlawful search. The United States Supreme

Court has held that if the initial opening of a container is lawful, the installation and monitoring of an electronic tracking device in the container does not violate the Fourth Amendment, unless the monitoring reveals information that could not have been obtained through visual surveillance. (*United States* v. *Karo* (1984) 468 U.S. 705 [82 L.Ed.2d 530, 104 S.Ct. 3296]; *United States* v. *Knotts* (1983) 460 U.S. 276 [75 L.Ed.2d 55, 103 S.Ct. 1081].) There was no violation of these principles in this case.

First, we note that appellant challenges neither the initial customs inspection at Los Angeles International Airport nor the probable cause for Halonen to obtain the federal search warrant to open the mail parcel on December 4. ■ It is now settled that exposing personal property to the sniff of a trained narcotics detecting dog is not a "search" for Fourth Amendment purposes. (*United States* v. *Place* (1983) 462 U.S. 696 [77 L.Ed.2d 110, 103 S.Ct. 2637]; *People* v. *Mayberry* (1982) 31 Cal.3d 335 [182 Cal.Rptr. 617, 644 P.2d 810].)[5] ■ Once alerted by the reactions of the dog, the customs officials had reasonable cause to suspect the international mail parcel might contain contraband and therefore they were authorized to open it. (*United States* v. *Ramsey* (1977) 431 U.S. 606 [52 L.Ed.2d 617, 97 S.Ct. 1972]; *United States* v. *Dubrofsky* (9th Cir. 1978) 581 F.2d 208, 211.) When field tests of the white powder indicated the presence of heroin, the forwarding of this information to Postal Inspector Halonen provided him with ample probable cause to obtain the search warrant permitting him to again open the mail parcel after he received it in San Francisco.

## B. *Installation of Beeper*

■ Appellant's complaint seems to focus on the fact that the search warrant did not expressly authorize either the installation or the monitoring of the beeper. That factor, however, is not controlling under the circumstances of this case. (See fn. 9, *infra.*)

The *installation* of a beeper in the circumstances of this case violated no one's Fourth Amendment rights. (*United States* v. *Karo, supra,* 468 U.S. at p. 711 [82 L.Ed.2d at p. 539]; *United States* v. *Dubrofsky, supra,* 581 F.2d at p. 211.) Nor did the transfer of the beeper-laden package to any recipients at the Kerner Street address constitute a "search" or a "seizure" within the meaning of the Fourth Amendment. (*United States* v. *Karo, supra,* 468 U.S. at p. 712 [82 L.Ed.2d at pp. 539-540].) ■ A "search," the Supreme Court said, occurs " 'when an expectation of privacy that society is prepared to consider reasonable is infringed.' " (*Id.,* at p. 712 [82

---

[5]Succinctly stated, sniffing dogs are not controlled by *Katz.* (See *Katz* v. *United States* (1967) 389 U.S. 347 [19 L.Ed.2d 576, 88 S.Ct. 507].)

L.Ed.2d at p. 539].) ■ A "seizure" of property occurs when " 'there is some meaningful interference with an individual's possessory interests in that property.' " (*Id.*, at p. 712 [82 L.Ed.2d at p. 540].)

■ Although the mail parcel may have contained an unknown and unwanted foreign object once the beeper was installed, there was no meaningful interference with anyone's possessory interest. At most, there was a technical trespass of the space occupied by the beeper. (*Ibid.*) ■ ■ ■ ■ Thus, no Fourth Amendment interest of appellant nor any other person was infringed by the installation of the beeper.[6]

## C. *Monitoring of Beeper*

■ The more significant question is whether there was any impairment of privacy interests occasioned by the *monitoring* of the beeper. The critical issue here is whether or not the monitoring of the beeper revealed information that could not have been obtained through visual surveillance. (See *United States* v. *Karo, supra,* 468 U.S. at pp. 713-714 [82 L.Ed.2d at pp. 540-544]; *United States* v. *Knotts, supra,* 460 U.S. at pp. 280-285 [75 L.Ed.2d at pp. 61-64].)

In 1983, the Supreme Court held in *Knotts* that the warrantless monitoring of a beeper inside a container of chemicals did not violate the Fourth Amendment. In that case, law enforcement officials, with the consent of the seller, installed the beeper in a five-gallon can of chloroform and monitored the beeper after delivery of the can to the buyer in Minneapolis, Minnesota. Officers then followed the car carrying the can of chloroform, maintaining contact both by visual surveillance and by monitoring the beeper signals. Ultimately, the beeper enabled officers to locate the can in the area of a secluded cabin in Wisconsin. This information, together with three days of intermittent visual surveillance of the cabin, enabled the officers to obtain a search warrant which led to the discovery of a drug laboratory within the cabin.

In analyzing the case, the court in *Knotts* stated that, "The governmental surveillance conducted by means of the beeper in this case amounted principally to the following of an automobile on public streets and highways.

---

[6]As the parcel was addressed anonymously to "House of - - -," whether it was the possessory interests of appellant or some unknown third party that were invaded when the parcel was opened is unclear. As this case arose before the effective date of Proposition 8, however, appellant still has standing to object to admission of evidence seized in violation of the rights of a third party. (See *In re Lance W.* (1985) 37 Cal.3d 873, 881-884 [210 Cal.Rptr. 631, 694 P.2d 744] [vicarious exclusionary rule inapplicable after effective date of Prop. 8]; *People* v. *Smith* (1983) 34 Cal.3d 251 [193 Cal.Rptr. 692, 667 P.2d 149] [Prop. 8 effective as to crimes committed after June 8, 1982].)

. . . [¶] A person traveling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another." (*United States* v. *Knotts, supra,* 460 U.S. at p. 281 [75 L.Ed.2d at p. 62].) "The fact that the officers in this case relied not only on visual surveillance, but also on the use of the beeper to signal the presence of [the] automobile to the police receiver, does not alter the situation. Nothing in the Fourth Amendment prohibited the police from augmenting the sensory faculties bestowed upon them at birth with such enhancement as science and technology afforded them in this case." (*Id.,* at p. 282 [75 L.Ed.2d at p. 63].)

Emphasizing the limited governmental use of the beeper in *Knotts,* the court noted that "nothing in this record indicates that the beeper signal was received or relied upon after it had indicated that the drum containing the chloroform had ended its automotive journey at rest on respondent's premises in rural Wisconsin. . . . [T]here is no indication that the beeper was used in any way to reveal information as to the movement of the drum within the cabin, or in any way that would not have been visible to the naked eye from outside the cabin." (*Id.,* at pp. 284-285 [75 L.Ed.2d at p. 64].)

A year later, the Supreme Court confronted a slightly different fact situation in *United States* v. *Karo, supra,* 468 U.S. 705. As in *Knotts,* law enforcement officers were investigating a suspected illegal drug manufacturing operation. With the consent of the chemical supplier, agents substituted one of their own containers, with a beeper installed, for one of the containers normally used by the supplier before shipping it to defendant.[7] The Supreme Court found this installation to be lawful. Concerning the monitoring, the Supreme Court posed the question "whether the monitoring of a beeper in a private residence, a location not open to visual surveillance, violates the Fourth Amendment rights of those who have a justifiable interest in the privacy of the residence." (*United States* v. *Karo, supra,* 468 U.S. at p. 714 [82 L.Ed.2d at p. 541].)

The Supreme Court said, "Here, there is no gainsaying that the beeper was used *to locate the ether in a specific house* in Taos, New Mexico, and that that information was in turn used to secure a warrant for the search of the house." (*Supra,* at p. 714 [82 L.Ed.2d at pp. 540-541], italics added.) The beeper was monitored "for a significant period" after the arrival of the ether in Taos and before the search warrant application. (*Id.,* at p. 714 [82

---

[7]The installation was also made pursuant to a court order, but the order was held invalid at the trial court level. (*United States* v. *Karo, supra,* 468 U.S. at p. — [82 L.Ed.2d at pp. 537-538].)

L.Ed.2d at p. 541].)[8] The Supreme Court continued, "The case is thus not like *Knotts,* for there the beeper told the authorities nothing about the interior of Knotts' cabin. The information obtained in *Knotts* was 'voluntarily conveyed to anyone who wanted to look. . . .' (citation); here, as we have said, the monitoring indicated that the beeper was inside the house, a fact that could not have been visually verified." (*Id.,* at p. 715 [82 L.Ed.2d at p. 542].)

The monitoring in our case is more analogous to that approved in *Knotts.* During their visual surveillance, the officers could see the mailman approach the Kerner Street address and place the parcel in the mailbox. The occupants of the house came out, they were observed bringing the parcel into the house, they departed for awhile and then returned. Shortly thereafter, appellant arrived and, about 20 minutes later, he was observed walking towards his car carrying what appeared to be a brown paper bag in his hand. As for the beeper, its sounds were picked up as the mailman initially came into range, and faded as appellant drove away. During cross-examination, Halonen explained that this particular beeper device sent out a signal that lets the listener know its approximate distance, but not the actual direction from which it came.

Thus, absent the visual observations of the mail parcel going to and coming from the house, the beeper device alone did not reveal its actual presence within the house at 3402 Kerner Street. As in *Knotts,* the governmental surveillance conducted by means of the beeper amounted principally to the following of an automobile on public streets and highways. (See *United States* v. *Knotts, supra,* 460 U.S. at p. 281 [75 L.Ed.2d at pp. 61-62].) As no information was obtained that could not have been obtained through visual surveillance, the monitoring of the beeper device in this case did not violate any Fourth Amendment rights.[9]

---

[8] Through a combination of visual and electronic surveillance, the chemical container in *Karo* was actually tracked for a total of four and one-half months, as it moved through three houses, two storage lockers, and at least one more house before it was brought to Taos on February 6, 1981. On February 8, the agents applied for and obtained a warrant to search the Taos residence, based in part on information derived through the use of the beeper. (See *id.,* at p. 709 [82 L.Ed.2d at pp. 537-538].)

[9] Significantly, the rate at which the beeper device transmitted its signals did not change during the course of the surveillance. The package had been wired so the beeps would increase when the package was opened. It could have affected our decision had the beeper signalled that the package was opened while it was within the residence. In that situation, significant information would be revealed from within a place not open to visual surveillance. (*United States* v. *Karo, supra,* 468 U.S. at pp. 714-715 [82 L.Ed.2d at p. 541].)

Despite its holdings in *Karo* and *Knotts* upholding the installation and some warrantless monitoring of these devices, the Supreme Court nevertheless encouraged law enforcement officers to obtain a warrant "since it may be useful, even critical, to monitor the beeper to determine that it is actually located in a place not open to visual surveillance." (*United*

In his brief, appellant relies principally on *People* v. *Smith* (1977) 67 Cal.App.3d 638 [136 Cal.Rptr. 764], the only California case involving a similar beeper device. In *Smith,* the court held the installation of a beeper in an airplane with the consent of the owner to be a violation of the Fourth Amendment, as the airplane had been rented and already was under the possession and control of the lessee-defendant. *Smith* is distinguishable from other cases cited in that the initial opening or access to the package or other property preceding installation of the beeper was itself unlawful. In *Knotts,* for example, the beeper was installed in a five-gallon container with the consent of the chemical company before the chemicals were sold to the suspects. (*United States* v. *Knotts, supra,* 460 U.S., at p. 278 [75 L.Ed.2d at pp. 59-60].) In *Karo,* the beeper was placed by agents in one of their own cans, which was then used by an informant to ship ether to Karo. (*United States* v. *Karo, supra,* 468 U.S. at p. 705 [82 L.Ed.2d, at p. 535].) Similarly, in *United States* v. *Hufford* (9th Cir. 1976) 539 F.2d 32, 33 (cert. den., 429 U.S. 1002 [50 L.Ed.2d 614, 97 S.Ct. 533]), cited in *Smith,* agents installed the beeper in a container with the consent of the chemical company before it was picked up by Hufford. At a later stage in that investigation, a court order was obtained authorizing installation of a beeper in Hufford's vehicle. In *United States* v. *Pretzinger* (9th Cir. 1976) 542 F.2d 517, 520, also cited in *Smith,* a beeper was attached to an airplane pursuant to a warrant authorizing the installation. The *Pretzinger* court suggested that no warrant is needed to justify the installation of an electronic tracking device if Fourth Amendment rights are not violated in order to initially install the device.

As noted above, appellant has not challenged the initial opening by the customs officials in Los Angeles (see *United States* v. *Dubrofsky, supra,* 581 F.2d at p. 211), nor the subsequent opening by Postal Inspector Halonen, acting pursuant to a warrant, just prior to installation of the beeper. Appellant's reliance on *Smith* is therefore misplaced.

### III. REOPENING OF PACKAGE AT POLICE STATION

When appellant's car was stopped, the mail package containing the heroin and beeper device was recovered from the front passenger seat. The package was turned over to Investigator Fred Castillo who later, at the police station, removed the outside brown paper wrapping from the package so it could be tested for fingerprint analysis. The transmitter was removed and returned

---

*States* v. *Karo, supra,* 468 U.S. at p. 713, fn. 3 [82 L.Ed.2d at p. 540].) To meet particularity requirements in this context, the court suggested that officers "describe the object into which the beeper is to be placed, the circumstances that led agents to wish to install the beeper, and the length of time for which beeper surveillance is requested." (*Id.,* at p. 718 [82 L.Ed.2d at p. 543].)

to Inspector Halonen and the white powder was retained as evidence. ■ Appellant contends this reopening of the package was unlawful because the police did not obtain a new search warrant.

This precise issue was considered and rejected in *Illinois* v. *Andreas, supra,* 463 U.S. 765, decided after the proceedings below. In *Andreas,* a shipping container was resealed and delivered to the defendant after a customs search revealed that it contained marijuana. Between 30 and 45 minutes after the delivery, the defendant reemerged from his apartment with the shipping container and he was immediately arrested and taken to the police station. There, the container was reopened without a search warrant. (*Id.,* at pp. 767-768 [77 L.Ed.2d at pp. 1007-1008].) The Supreme Court held that "absent a substantial likelihood that the contents have been changed, there is no legitimate expectation of privacy in the contents of a container previously opened under lawful authority." (*Id.,* at p. 773 [77 L.Ed.2d at p. 1011].) Once the container had been found to a certainty to contain illicit drugs, the contraband became like objects physically within the plain view of the police and the claim to privacy had been lost. The owner may retain the incidents of title and possession but not privacy. (*Id.,* at pp. 771-772 [77 L.Ed.2d at p. 1010].)

The fact the search of the parcel was not made contemporaneously with the arrest also is not controlling. In the recent case of *United States* v. *Johns* (1985) 469 U.S. — [83 L.Ed.2d 890, 105 S.Ct. 881], a warrantless search occurring three days after the packages of marijuana were seized from defendants' pickup trucks was held to be reasonable.

At trial, appellant relied heavily on the case of *People* v. *Riegler* (1981) 127 Cal.App.3d 317 [179 Cal.Rptr. 530], a case bearing factual similarities to this one.[10] Although the defendant in that lengthy litigation ultimately

---

[10]The *Riegler* litigation arose from a 1977 drug investigation. As stated in the initial appeal, that case involved "the applicability of the container decisions to wrapped and sealed packages arriving by overseas mail which are opened by customs officials, resealed, delivered in a controlled delivery with a search warrant for the residence of the addressee, seized in a vehicle approximately 100 miles from that residence, returned to the city of the addressee, and subsequently opened by law enforcement officers without first obtaining a search warrant to open the packages." (*People* v. *Riegler* (1980) 111 Cal.App.3d 580, 582 [168 Cal.Rptr. 816].) The Court of Appeal concluded the seizure of the package was proper, but the subsequent warrantless reopening was not, and reversed the judgment of conviction. (*Ibid.*)

After the California Supreme Court denied a hearing (three justices voting to grant the petition), the United States Supreme Court granted certiorari, ordered the judgment vacated, and remanded the case for further consideration in light of *New York* v. *Belton* (1981) 453 U.S. 454 [69 L.Ed.2d 768, 101 S.Ct. 2860]. (*California* v. *Riegler* (1981) 453 U.S. 919 [69 L.Ed.2d 1001, 101 S.Ct. 3154].)

On remand, the California Court of Appeal reconsidered the matter, and concluded the *Belton* rule, permitting a warrantless search of the passenger compartment of an automobile, and containers found therein, when incidental to a lawful arrest, was inapplicable. (*People*

prevailed (see *People* v. *Riegler* (1984) 159 Cal.App.3d 1061 [206 Cal.Rptr. 223]), it was for reasons relating to the difficulties in relitigating a seven-year-old case, rather than the substantive issues involved. As we stated above, the reasonableness of the subsequent warrantless reopening of the mail parcel at the police station is now settled by *Illinois* v. *Andreas, supra,* 463 U.S. 765.

Judgment affirmed.

Anderson, P. J., concurred.

**POCHÉ, J.**—I concur in the judgment.

When law enforcement officials in the case at hand monitored the beeper (this now appears to be the official terminology; see *United States* v. *Karo* (1984) 468 U.S. 705 [82 L.Ed.2d 530, 536, 104 S.Ct. 3296, 3299] as it beeped from within the residence at 3402 Kerner Street—a location not open to visual surveillance—they violated the Fourth Amendment rights of those who had a justifiable interest in the privacy of the residence. That is exactly what the Supreme Court of the United States held little more than a year ago in *United States* v. *Karo*. (*Id.,* 468 U.S. at p. 715 [82 L.Ed.2d at pp. 541-542, 104 S.Ct. at pp. 3303-3305.) I am at a complete loss to understand why the majority opinion does not acknowledge that undeniable aspect of this case.

However, the taint of that illegality was sufficiently attenuated so that it can fairly be said that the stop of Abdos Salih's car and his subsequent arrest were not the product of that illegality. (*Wong Sun* v. *United States* (1963) 371 U.S. 471, 488 [9 L.Ed.2d 441, 455-456, 83 S.Ct. 407].) If law enforcement officials had turned on their monitoring equipment only after Salih stepped out of the residence on his way to his car their electronic listening activities would have been constitutionally pure since those activ-

---

v. *Riegler, supra,* 127 Cal.App.3d 317.) The court believed the four- to five-hour delay between the arrest and seizure and the later search was fatal to the officers' right to open the packages without a warrant. (*Id.,* at p. 322.) Again, the judgment of conviction was reversed.

After the California Supreme Court denied a hearing (two justices voting to grant a hearing), the United States Supreme Court again ordered the case remanded, this time for further consideration in light of *Illinois* v. *Andreas, supra*. (*California* v. *Riegler* (1983) 463 U.S. 1222 [77 L.Ed.2d 1405, 103 S.Ct. 3564].)

In its third review of the case, the Court of Appeal concluded, as a matter of state law, that if *Andreas* were to be applied to the case on appeal, it would involve a new theory grounded on a disputed factual issue neither asserted nor litigated in the trial court. In view of the seven years that had elapsed since the case arose, the court questioned whether any officer could now testify with certainty as to disputed factual questions presented by *Andreas*. The court thus declined to remand the case for a new suppression hearing and, again, reversed the judgment, apparently bringing the lengthy litigation to an end. (See *People* v. *Riegler* (1984) 159 Cal.App.3d 1061 [206 Cal.Rptr. 223].)

ities of Salih occurred outside the residence and not only were open to visual surveillance but in fact were surveilled by an army of law enforcement officials. (*United States* v. *Knotts* (1983) 460 U.S. 276, 281-283 [75 L.Ed.2d 55, 61-63, 103 S.Ct. 1081].) So far as I can determine the information police obtained from listening to the beeper while it was located within the residence assisted them in the eventual arrest and search of Salih only in that through those means they were able to determine that the package remained on the premises until Salih left. But knowledge of the crucial fact that Salih was leaving with the contraband was in no way a product of the electronic monitoring of the beepings from within the building but rather was entirely the product of extra-residential beeping and monitoring. To put it another way, the police knew Salih was leaving the residence when they watched him do so with a paper bag package under his arm. But they did not know the contents of that package: that could not be determined by visual or electronic methods until his car pulled away and the beeping became fainter. Thus the relevant time of electronic surveillance was from Salih's exiting of the house until the sounds grew fainter and under *Knotts* no constitutional violation occurred. (*Ibid.*)

That conclusion of attenuation of the taint of the constitutional violation of Salih's privacy interests in the residence requires that I address whether the placing of the beeper in the package violated any constitutionally recognizable privacy interest of Salih in the package itself. The answer is that Salih had no privacy interest in that container of contraband once the police lawfully opened it and identified its contents as illegal. (*Illinois* v. *Andreas* (1983) 463 U.S. 765, 771 [77 L.Ed.2d 1003, 1010, 103 S.Ct. 3319].)

To sum up, I conclude: (1) that by electronically monitoring the beeper while it was in the residence the police violated Salih's Fourth Amendment privacy rights in and to the residence; (2) that the eventual seizure of the package was not in any real sense the product of the illegal monitoring; (3) that from the moment police legally opened the container and found it contained contraband Salih had no privacy interest in that container and thus he cannot complain about the placing of the beeper in the package of contraband.

I therefore concur in the judgment of this court affirming the judgment of conviction.

A petition for a rehearing was denied November 22, 1985, and appellant's petition for review by the Supreme Court was denied February 20, 1986.