[Crim. No. 23755. Second Dist., Div. Four. Mar. 18, 1974.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL SHAPIRO, Defendant and Appellant.

## COUNSEL

Allen King for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Frederick R. Millar, Jr., and Shunji Asari, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**JEFFERSON, Acting P. J.** — By information, defendant was charged in count I with transportation of marijuana in violation of then Health and

Safety Code section 11531 and in count II with possession of marijuana for sale in violation of then Health and Safety Code section 11530.5. Defendant's motions pursuant to Penal Code sections 995 and 1538.5 were denied.

The cause was submitted to the court after a jury waiver and pursuant to a stipulation by defendant, with each side reserving the right to put on additional evidence.

The court found defendant guilty on count I, transportation of marijuana in violation of section 11531 of the Health and Safety Code. Proceedings were suspended and defendant was granted probation for a period of two years on the condition among other things, that he spend the first 90 days in the county jail. Count II was dismissed on motion of the People. Defendant appeals from the judgment (order granting probation).

On November 3, 1971, John Donovan, special agent, United States Customs, Treasury Department, received from a fellow customs officer a newspaper addressed to a Dr. Stoner, in care of Mr. Shapiro and addressed to 1911 North Beverly Glen Drive, Los Angeles County. The newspaper bore a return address in London indicating the return addressee as Michael Shapiro. Inside the newspaper was a package which Mr. Donovan had tested for narcotic content. A Narcoban test indicated that the package contained a quantity of marijuana in the form of hashish. After the package had been tested and it was revealed that a quantity of narcotics was contained therein, it was returned to the United States postal authorities for delivery.

On November 19, 1971, Mark Kroeker, a Los Angeles Police Department officer, went to 1911 North Beverly Glen Drive with a search warrant. He was admitted to the residence of Michael Boyt. The officer arrested Boyt and the two other individuals who were present in the front room of the location. He then showed a copy of the warrant to Boyt and read it aloud, after which he conducted a search of the premises.

After the premises were searched, the following items were found and recovered for evidence: 13½ kilo bricks of marijuana, a cube of hashish weighing approximately 27½ grams, 2 foil-wrapped cubes of hashish weighing approximately 30 grams; a brown paper bag containing 3 bags of marijuana and 1 cigarette, a white plastic bag containing 4 smaller bags of marijuana, a purse containing 2 bags of marijuana, a bag of hashish weighing approximately 5 grams, a plastic bag containing marijuana, a glass jar containing marijuana seeds, an aspirin bottle containing 33 white pills and 34 red pills, a pink and clear container containing numer-

ous capsules and pills, a green suitcase, a newspaper addressed to 1911 North Beverly Glen Drive, inside of which hashish had been found, numerous items of personal effects with the names of Michael Shapiro and Michael Boyt and the address of 1911 North Beverly Glen Drive, keys to the residence at 1911 North Beverly Glen Drive, a coin envelope containing $944 and a coin envelope containing $13.

Other items recovered in the search were rent receipts, utilities bills, letters addressed to Michael Boyt and Michael Shapiro at 1911 North Beverly Glen Drive and photographs of defendant seated with his feet propped up by approximately 12 packages wrapped in paper having dimensions of 8-10 inches by 3-4 inches by 6 inches.

Joseph V. Amore, a Los Angeles Police Department officer, qualified as an expert regarding the manner in which marijuana and dangerous restricted drugs and narcotics are possessed and packaged for sale in Los Angeles County. He testified it was his opinion that the 13½ kilos of marijuana were possessed for sale and the hashish was not possessed for sale.

Defendant testified in his own behalf: he resided at 1911 North Beverly Glen Drive; he left for Europe on October 12, returning on December 26; he was aware the police officers discovered several kilos of marijuana and other narcotics at his address on November 19, but he did not know how the narcotics arrived at his residence. The narcotics had not been at his residence on October 12, 1971, when he left for Europe.

He admitted that he was aware a mailing wrapper containing a newspaper and some hashish was recovered from his residence during a police search on November 19th. He also admitted that he had mailed the package to the location but denied that he ever possessed the package in the United States.

It was stipulated that the handwriting on the mailing wrapper that enclosed the newspaper which in turn contained the hashish was compared with handwriting exemplars furnished by the defendant and that the comparison indicated they belonged to one and the same person.

■ Defendant contends that the search warrant, pursuant to which the contraband in question was discovered, was issued without probable cause. Defendant argues that the search warrant issued upon the affidavit of Sergeant Kroeker was premature. We find no merit in defendant's contention nor his argument.

Sergeant Kroeker's affidavit of November 19, 1971, in support of the

search warrant indicated that a package, addressed to defendant's residence, had been intercepted by officials of the United States Customs office, and it was discovered to contain hashish. The affidavit further alleged that the package would be delivered through the U.S. mails later that day.

Defendant is in error when he argues that, since the affidavit in support of the warrant did not establish probable cause to conduct an immediate search at the time the warrant was sought, the warrant was improperly issued. The warrant was not invalid because it was based upon an affidavit which established a future, rather than a present, probable cause to search.

This exact and identical issue was raised and resolved against a defendant in *Alvidres* v. *Superior Court,* 12 Cal.App.3d 575, 580-581 [90 Cal.Rptr. 682]. In the *Alvidres* case, the affidavit recited, as in the instant case, that the officer had received information from a special agent of the federal Bureau of Customs that a parcel addressed to the defendant Gabriel Alvidres had been opened at the federal Bureau of Customs and the parcel contained marijuana. The parcel was placed back in the mails for delivery to defendant and a search warrant was issued to be served at a later date when the package would arrive. The court held that the affidavit asserting a future mail delivery of narcotics, sufficiently established probable cause to support the issuance of a search warrant. In so holding, the court said, at page 581: "We must ask ourselves whether the objective of the rule is better served by permitting officers under circumstances similar to the case at bar to obtain a warrant in advance of the delivery of the narcotic or by forcing them to go to the scene without a warrant and there make a decision at the risk of being second-guessed by the judiciary if they are successful in recovering evidence or contraband. We believe that achievement of the goals which our high court had in mind in adopting the exclusionary evidence rule is best attained by permitting officers to seek warrants in advance when they can clearly demonstrate that their right to search will exist within a reasonable time in the future. Nowhere in either the federal or state Constitutions, nor in the statutes of California, is there any language which would appear to prohibit the issuance of a warrant to search at a future time. This period, of course, would be subject to the 10-day limitation which is set out in Penal Code section 1534."

It was also held in *People* v. *Sloss,* 34 Cal.App.3d 74, 82 [109 Cal.Rptr. 583], that a warrant to search for a piece of mail after its delivery to a designated address may issue before such delivery, where the affidavit gave probable cause to believe that the piece will be at that address at the time specified in the affidavit.

■ Defendant contends the search warrant was issued out of an illegal

planting of evidence and is, therefore, invalid. Defendant argues that, once customs officials had intercepted defendant's package and determined it to contain hashish, their delivery of the package to defendant constituted quasi-entrapment. The contention is without merit and the argument is fallacious. A very similar, if not identical, contention was raised by defendant Kosoff, in *People* v. *Kosoff,* 34 Cal.App.3d 920, 932 [110 Cal.Rptr. 391], and decided against defendant. The court said, at pages 932, 933: "It is argued that the procedure used herein was a form of 'entrapment' or at least of questionable public policy in that, had defendant been given an opportunity to refuse permission for a search of the package the contraband would never have been delivered into the country. But it has consistently been held that it is proper for the authorities to allow a package of known contraband to be delivered to its intended recipient, for the purpose of apprehending or investigating the importers of narcotics. (*Chapman* v. *United States* (10th Cir. 1971) 443 F.2d 917, 920; [citations].) In *Chapman* the court said: 'Appellants next contend that the customs agents should have seized the contraband in New York when it was first discovered and that failure to do so constituted illegal entrapment. It is permissible to allow contraband to reach its destination. In United States v. Davis, 272 F.2d 149, 153 (7th Cir. 1959) the court said: "To require immediate seizure of the contraband upon discovery would deprive federal officers of a most effective method of obtaining evidence against ultimate consignees, clearly a result contrary to Congressional intent." . . . If contraband were simply seized by customs agents and disposed of, then the intended receivers of the illicit goods would go unpunished. The government, in cases such as this, does not initiate the crime. It simply monitors the crime until it can identify the participants. We see no merit in appellant's contention that the commission of the offense would have been impossible without the actions of the agents. The offense would still have been committed. Without the actions of government officials the crime would have gone undetected.' "

We conclude that the controlled delivery of the narcotics in this case was proper and necessary and in no way constituted unlawful entrapment.

■ Defendant contends the search warrant was issued upon the illegal delivery of contraband, arguing that the package of hashish discovered at the post office was "unmailable matter" pursuant to definitions in 18 United States Code Annotated section 1716, and 39 United States Code Annotated section 4001. Defendant continues, "Once the Post Office Department discovered that the matter was contraband and could not be legally delivered, they were obliged to either destroy it or confiscate the package." Defendant finally reaches the conclusion that "the delivery of the package was an illegal delivery and the Search Warrant resting thereon was invalid."

Defendant's contention is without merit and his arguments in support thereof are fallacious and unsound.

"Moreover it has been squarely held by the federal courts that violation of the regulations does not render the search illegal or in violation of the Fourth Amendment or require the fruits of such search to be excluded from evidence in court." (*People* v. *Kosoff, supra,* at p. 929.)

The *Kosoff* case relies on *United States* v. *Beckley,* 335 F.2d 86, and states, "[A] sealed package was mailed air parcel post from the Canal Zone to Detroit. The package was searched by customs authorities in Miami, rewrapped and sent on to Detroit, where it was delivered to Beckley's home, and a search warrant was obtained authorizing the seizure of the package and contents from the home. It was argued that the delay of the package between Miami and Detroit for customs inspection and the failure to place a stamp on the package indicating that it had been opened was in violation of federal statutes and regulations. The court held that the alleged violation of federal statutes in delaying the package and failing to confiscate it immediately was not a basis for suppressing evidence. The court also declined to suppress evidence based on the alleged violation of an administrative regulation relating to failure to place a seal on the package indicating that it had been opened."

We hold that the court properly denied defendant's motion made pursuant to Penal Code section 1538.5, to suppress the hashish.

In *United States* v. *Sohnen,* 298 F.Supp. 51, the court held that evidence should not be suppressed merely because the search of defendant's mail was contrary to postal regulation although otherwise reasonable. Said the court, at page 53: ". . . Exclusion of highly reliable and probative evidence is a sanction to be used by the courts only when there is a grave danger to clearly defined national policy. [Citations.] It is not clear whether these postal regulations were designed merely to control internal procedures or whether they were also intended to protect addressees. Even if they were intended to protect recipients of mail from abroad, in light of the historical basis for customs searches discussed above, we cannot say that they rise to the level of national policy so as to require a *per se* rule of exclusion."

"If the federal courts do not consider that the violation of these regulations by federal officers renders the search illegal or the evidence inadmissible, the evidence should not be inadmissible in California courts. The purpose of the exclusionary rule is to deter unlawful conduct and unreasonable searches and seizures by law enforcement officers. Since the federal courts do not enforce the exclusionary rule against federal customs

officials who have violated the regulations, the adoption of a contrary rule by the California state courts would have minimal if any effect as to encouraging customs officials to observe their own regulations. Since the purposes of the exclusionary rule would not be served by applying it in the instant case, we should not do so. The federal courts have uniformly held that the violation of the regulations in question does not render the search illegal. We are bound by that determination because the legality of a customs search is governed by federal, rather than state law. [Citations.]" (*People* v. *Kosoff, supra,* 34 Cal.App.3d at p. 930.)

The judgment (order granting probation) is affirmed.

Kingsley, J., and Dunn, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 16, 1974.