772 P.2d 250

STATE of Idaho, Plaintiff–Respondent,

v.

Ronald Allen WRIGHT, Defendant–Appellant.

No. 17057.

Court of Appeals of Idaho.

April 6, 1989.

Jay A. Kohler, Hart & Kohler Law Offices, Idaho Falls, for defendant-appellant.

Jim Jones, Atty. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for plaintiff-respondent.

WALTERS, Chief Judge.

The appellant, Ronald Allen Wright, conditionally entered a plea of guilty to a charge of possessing a controlled substance. His plea reserved the right to seek appellate review of an order denying his motion to suppress evidence seized pursuant to a search warrant. I.C.R. 11(a)(2). For reasons explained below, we affirm the order refusing to suppress the evidence.

A brief summary of the facts is as follows. After Officer Ericsson of the Idaho Falls, Idaho, police department arrested Robert Burnside on a drug-related charge in 1984, he received information from confidential informants regarding Burnside and other persons in the Idaho Falls area who were reportedly involved in Burnside's drug organization. One of the "other persons" involved was Ronald Wright. On August 29, 1986, warrants were issued in Bonneville County to search Burnside's vehicle and two residences, including Wright's home. The warrants were based upon Ericsson's affidavit and his testimony presented to a magistrate that Burnside, a Boise resident, planned to transport a large quantity of methamphetamine from Boise to Idaho Falls within the following week. The search of Wright's house occurred two days following the issuance of the warrants and shortly after the officers found Burnside in Idaho Falls. The search revealed marijuana cigarettes, methamphetamine, and drug paraphernalia. As a result, Wright was charged with possession of a controlled substance (methamphet-

amine), I.C. § 37–2732.[1] When the district court refused to suppress the evidence obtained during the search, Wright entered a conditional plea of guilty. The district court ordered that judgment be withheld and placed Wright on probation for three years. Wright then brought this appeal.

Wright challenges the judge's order denying the suppression motion, on several grounds. First, he maintains that the search warrant was issued without probable cause. Next, he contends the affidavit, submitted to the magistrate in support of the warrant, contained intentionally false and misleading statements by the affiant, Ericsson. Third, he argues that the warrant violated I.C.R. 41(c) by failing to contain language directing execution of the warrant within fourteen days. He further asserts that I.C.R. 41(d) was violated when the return on the warrant was made by an officer who was not present during execution of the warrant. Finally, he submits that the warrant was "anticipatory" of future events, and was therefore unconstitutional.

## I. *Probable Cause*

The first point of inquiry is whether the magistrate erred in determining there was probable cause to issue a warrant to search Wright's home. In this regard, it must be determined whether there was a substantial basis, under the totality of the circumstances, for the magistrate to conclude that probable cause existed. *State v. Lang,* 105 Idaho 683, 672 P.2d 561 (1983). As author of the lead opinion on the appeal in this case, my review of the record persuades me that the magistrate was correct, although the other members of this Court conclude otherwise. (*See* special concurring opinions of Swanstrom, J., and Burnett, J., *infra,* determining that the search nevertheless will be upheld under *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).) The following discussion in this Part, therefore, repre-

sents the analysis and view of this author only.

Officer Ericsson's affidavit and testimony, presented to support the issuance of the warrant to search Wright's home, contained the following information, in a loosely chronological fashion. He related that since 1984 he had received information from confidential informants reporting that three of Robert Burnside's most trusted acquaintances were helping Burnside handle the majority of Burnside's methamphetamine business in the local county area. The three acquaintances were identified by the informants as Ed Casey, Bruce Lines, and the appellant, Ronald Wright. Ericsson stated that he personally had observed Burnside frequenting the addresses of the three acquaintances several times in the prior two years. He related that he had last seen Burnside eight days earlier on August 21, 1986, when he observed Burnside and Lines replacing a door panel on Burnside's automobile. Ericsson said he followed Burnside to a bar where he observed Burnside contact an individual in the company of Ed Casey, and Ericsson represented that he had arrested Casey earlier that day for delivery of a controlled substance to an undercover officer. Ericsson then averred that the informants he had "used in this case have been proven reliable on several different occasions, with several warrants and arrests being obtained through information gathered from these individuals." He further confirmed that several convictions had resulted from information provided by these informants.

Referring to the day before his affidavit was presented to the magistrate, Ericsson further stated that on August 28, 1986, he had been contacted by Kent Madsen, a special agent of the F.B.I. Madsen informed Ericsson that he, Madsen, had a confidential informant supply him with information concerning Burnside. Ericsson's affidavit continued:

> This informant is a close associate of one of the suspects and was personally

1. Apparently Wright also was charged with misdemeanor possession of marijuana and paraphernalia. However, the disposition of those allegations is not indicated in the record before us.

present and privy to the conversation between Burnside and the suspect Burnside told about the impending drug delivery. Information given by this informant as to the person involved in this drug trafficing [sic] operation, their residences, places of employment, and their association with Burnside and drug dealing have all been coorborated [sic] by myself in the following regards: Edwin Casey has been arrested for delivering methamphetamine to an undercover officer and is currently in jail for this offense. Bruce Lines has been known by this officer to associate with Robert Burnside and assist him in replacing a door panel on his car and other informants have indicated in the past that Lines sold narcotics out of his business on Ninth Street. Past investigations by myself have disclosed that Robert Burnside frequents the residence of Ron Wright at 439 Gladstone and this residence has been the source of methamphetamine in cases where persons delivered methamphetamine to myself. The confidential informant provided information concerning several of the same players as I mentioned before, this being Ron Wright, Ed Casey and Bruce [Lines] and a Frank [last name unknown]. This informant stated that Robert Burnside delivers usually six pounds or more of methamphetamine to these people on a regular basis. The informant has personally seen Bob Burnside deliver pounds of methamphetamine to Ed Casey and Bruce Lines and has also seen Robert Burnside deliver methamphetamine to Ron Wright. The informant was present during the past week when Robert Burnside spoke with one [of] these individuals and stated that he would return to Idaho Falls with more methamphetamine prior to the time that school started. School starts in this area next Tuesday, that being the 2nd day of September, 1986. According to this informant Robert Burnside brings the methamphetamine to Idaho Falls in his Chevy Camero. With the information obtained from Special Agent Madsen's informant leads me to believe that this information

is true and correct and that there is probable cause to believe that Robert Burnside will be delivering a large quaniety [sic] of methamphetamine within the next week, therefore I believe we have probable cause to obtain a Search Warrant for the residence of Ron Wright that being 439 Gladstone Ave, Idaho Falls, Bonneville County, State of Idaho.

Ericsson's affidavit then represented that significant quantities of methamphetamine can be easily concealed and that F.B.I. agent Madsen's informant had said that Burnside transported methamphetamine in his automobile, most likely in the door panels. Finally, in applying for the search warrant, Officer Ericsson testified that Burnside lives in Boise and does not have a residence in the Idaho Falls area. Accordingly, Ericsson requested warrants to search Burnside's automobile and the residences of Bruce Lines and Ronald Wright.

Wright questions the sufficiency of the information presented to the magistrate by Officer Ericsson in several particulars. He argues that the information attributed to the informants was nothing more than "casual rumor circulating in the underworld" and an accusation based merely on Wright's general reputation. He submits that the statements of the informants were vague and conclusory in nature without sufficient data to determine the veracity, reliability and basis of the informant's knowledge. He argues that Ericsson's personal observation of Burnside at the addresses of Casey, Lines and Wright, "several times in the last two years," without more specificity as to dates, renders that information suspect because of staleness. He suggests that there was no evidence of the reliability of the F.B.I. informant, or of the basis of that informant's knowledge with regard to the information provided to F.B.I. agent Madsen. I am not persuaded by Wright's assertions.

Affidavits for search warrants must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). "A magistrate's determination of probable

cause should be accorded great deference by the appellate court.... Similarly, such affidavits should be tested by standards less rigorous then those governing the admissibility of evidence at trial." *State v. Gomez,* 101 Idaho 802, 805, 623 P.2d 110, 113 (1980), *cert. denied,* 454 U.S. 963, 102 S.Ct. 503, 70 L.Ed.2d 378 (1981).

Clearly, the different sources of Ericsson's information tended to corroborate each other. The totality of the circumstances showed that Burnside's drug-trafficking organization was an ongoing operation. Ronald Wright was identified as one of Burnside's trusted associates who had been seen receiving delivery of methamphetamine from Burnside. Wright's home had been the source of methamphetamine delivered by other persons to Ericsson. Burnside had been seen at and known to frequent Wright's home. An imminent delivery of controlled substances into the Idaho Falls area by Burnside reasonably could involve Wright and his home. I conclude that there was a substantial basis for the magistrate to find that probable cause existed to issue the warrant for a search of Wright's house.

## II. *False and Misleading Statements*

■ Wright next contends that Detective Ericsson presented false and misleading statements in the application for the search warrant which would impact the magistrate's finding of probable cause. Therefore, he argues, any evidence seized pursuant to that warrant should be suppressed.

*Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), discusses the applicable standard for analyzing an attack on a search warrant where the challenge is based on an alleged material misrepresentation of fact in the affidavit supporting the warrant. *Franks* requires a threshold showing by the party challenging the warrant—demonstrating by a preponderance of the evidence—that information in the affidavit was false and made knowingly and intentionally or with reckless disregard for the truth. Upon such a showing, the evidence questioned in the affidavit must be disregarded and the finding of

probable cause shall be reviewed upon the evidence or information remaining in the affidavit. *Id.; see also State v. Lindner,* 100 Idaho 37, 592 P.2d 852 (1979).

Here, the information Wright claimed as misleading concerns Burnside frequenting Wright's residence. In his affidavit, Officer Ericsson stated: "I have personally observed Robert Burnside frequenting these three addresses *several times* in the last two years that I have been involved with the Burnside organization." [Emphasis added.] Wright asks us to compare that statement with Ericsson's testimony given at the suppression hearing. There Ericsson stated that he had personally observed Burnside at Wright's residence on only *one* occasion, about a year before, in the fall of 1985. Wright argues that Ericsson intended for the magistrate to believe that Ericsson had personally observed Burnside frequenting the Wright residence several times in the last two years; rather than understanding that Ericsson had observed Burnside frequenting the three addresses, cumulatively, several times in the last two years. Wright urges that Ericsson was intentionally misleading the magistrate or that Ericsson made the statement with reckless disregard for the truth, and therefore, the statement should be excised from the affidavit.

■ The district court rejected Wright's argument, noting that:

Although the affidavit of Detective Todd Ericsson is subject to different interpretation and inference, the court does not find that the affidavit, the testimony of Ericsson or any of the proceedings below were misleading, false, or constituted a reckless disregard for the truth of the matter as stated by the court in the amended memorandum decision on file herein.

We agree with the district judge that the affidavit's recital is subject to alternative interpretations. We accept the judge's determination that the affidavit was not intended to be false or misleading, and that it did not reflect a reckless disregard for the truth. Negligent or innocent misrepresentations, even if necessary to establish prob-

able cause, will not invalidate a warrant. *State v. Lindner, supra; State v. Kelly,* 106 Idaho 268, 678 P.2d 60 (Ct.App.1984), *cert. denied,* 469 U.S. 918, 105 S.Ct. 296, 83 L.Ed.2d 231 (1984). Accordingly, we decline to overturn the warrant on this issue.

### III. *Time Limitation to Execute Search Warrant*

■ The next issue raised by Wright concerns the failure of the warrant to specify the period within which the warrant was to be executed. Rule 41(c) of the Idaho Criminal Rules provides that the warrant "shall command the officer to search, within the specified period of time, not to exceed fourteen (14) days, the person or place named for the property or person specified." [2] Although courts strictly enforce the statutory time period for a warrant's validity, failure of the issuing magistrate to actually specify in the warrant the period—within which the warrant must be executed—will not lead to suppression. *See United States v. Burke,* 517 F.2d 377 (2d Cir.1975); *United States v. Bedford,* 519 F.2d 650 (3rd Cir.1975), *cert. denied,* 424 U.S. 917, 96 S.Ct. 1120, 47 L.Ed.2d 323 (1976); *Commonwealth v. Vitello,* 367 Mass. 224, 327 N.E.2d 819 (1975).

■ In this case, the warrant was executed by the officers within forty-eight hours of its issuance—well within the fourteen-day period provided in I.C.R. 41(c). Wright has demonstrated no resultant prejudice from the lack of a time specification on the face of the warrant. Although the better practice would be to include the required time limit within the body of the warrant, we hold that failure to do so is not fatal to the search warrant or the admissibility of the evidence seized where no prejudice is shown by the party whose person

or property has been subjected to the search.

### IV. *Return on Warrant*

Wright next asserts that, contrary to I.C.R. 41(d),[3] the return on the warrant was made by an officer who did not actually execute the warrant. The return filed with the court was verified by Officer Ericsson, although he did not personally participate in the search of Wright's home. The state responds by pointing out that the propriety of the return on the warrant was never questioned by Wright in the proceedings below. Because this challenge is being asserted for the first time on appeal, the state argues that it is not properly a subject for appellate review in this case. We agree with the state's position.

■ Ordinarily, we will not entertain substantive issues raised for the first time on appeal. *Standards of Appellate Review,* § 3.5.1, IDAHO APPELLATE HANDBOOK (Idaho Law Foundation, Inc., 1985). An exception to this rule exists when the doctrine of "fundamental error" applies; that is, the error is grounded in a criminal defendant's due process right to a fair trial. *Id., State v. Kelly, supra; State v. Williams,* 103 Idaho 635, 651 P.2d 569 (Ct.App.1982). Nonetheless, where the claimed error relates not to infringement upon a constitutional right, but to a violation of a rule or statute, the fundamental error doctrine is not implicated and may not be used to obtain review of an issue which has otherwise been waived by failure to seek a ruling below. *State v. Kelly, supra.* Defects in the return of a search warrant are not of a constitutional dimension. *State v. Mason,* 111 Idaho 660, 726 P.2d 772 (Ct.App.1986), *citing State v. Kel-*

---

**2.** A statute, I.C. § 19–4412, also specifies a time limitation with respect to search warrants. It provides:

> A search warrant must be executed and returned to the magistrate who issued it, within ten (10) days after its date; after the expiration of this time the warrant, unless executed, is void.

Our Supreme Court has opined that I.C.R. 41 controls to the exclusion of a statute (I.C. § 19–4411) affecting the requisites of a search warrant. *State v. Lindner,* 100 Idaho 37, 42 n.

5, 592 P.2d 852, 857 n. 5 (1979). *See also State v. Lewis,* 107 Idaho 616, 691 P.2d 1231 (1984).

**3.** Idaho Criminal Rule 41(d) states in part that:

> A verified return shall be promptly made to a district court judge or magistrate in the county where a warrant for the seizure of property or a person was issued.

Notably, Rule 41(d) does not specify *who* shall make the return, only that a "verified return" be made.

*ly, supra.* We therefore do not reach the issue challenging the return on the warrant.

## V. *Anticipatory Warrant*

Finally, Wright asserts that the search warrant was invalid because it was an "anticipatory" warrant. This issue is closely related to the probable cause question discussed in Part I. Accordingly, as noted earlier, the views expressed here are solely those of the author. The views of Swanstrom, J., and Burnett, J., are explained in their separate opinions, *infra.*

Anticipatory warrants [4] have been upheld in many jurisdictions. *See, e.g., United States v. Outland,* 476 F.2d 581 (6th Cir. 1973); *United States ex rel. Beal v. Skaff,* 418 F.2d 430 (7th Cir.1969); *United States v. Feldman,* 366 F.Supp. 356 (D.Hawaii 1973); *Johnson v. State,* 617 P.2d 1117 (Alaska 1983); *Mehrens v. State,* 138 Ariz. 458, 675 P.2d 718 (Ct.App.1983), *cert. denied,* 469 U.S. 870, 105 S.Ct. 219, 83 L.Ed. 2d 149 (1984); *People v. Shapiro,* 37 Cal. App.3d 1038, 113 Cal.Rptr. 54 (1974); *State v. Mier,* 147 N.J.Super. 17, 370 A.2d 515 (1977); *People v. Glen,* 30 N.Y.2d 252, 331 N.Y.S.2d 656, 282 N.E.2d 614, *cert. denied,* 409 U.S. 849, 93 S.Ct. 58, 34 L.Ed.2d 91 (1972); *Commonwealth v. Soares,* 384 Mass. 149, 424 N.E.2d 221 (1981); *State v. Slowe,* 728 P.2d 110 (Ut.1985). The practice of obtaining a warrant before delivery of the contraband is preferable to seizing the property without a warrant upon the contraband's arrival. *People v. Glen, supra.* The *Glen* court approved the practice of anticipatory issuance of warrants but cautioned:

> [W]here there is no present possession the supporting evidence for the prospective warrant must be strong that the particular possession of particular property will occur and that the elements to bring about that possession are in process and will result in the possession at the time and place specified.... Moreover, the issuing Judge should be satis-

fied that there is no likelihood that the warrant will be executed prematurely. 282 N.E.2d at 617.

The issuance of a warrant in advance of an expected delivery of controlled substances—permitting a search for and seizure of the substances upon their subsequent arrival—is not unknown in Idaho. *See, e.g., State v. O'Campo,* 103 Idaho 62, 644 P.2d 985 (Ct.App.1982). In the present case, the evidence that a prospective crime would be consummated was logically and probatively strong. There was evidence of Burnside's imminent drug delivery and of Wright's house as a possible delivery point. The necessary pieces were in motion and all but inevitably the pieces would come together at a later time, constituting the crime. There was little, if any, likelihood the warrant would be executed prematurely at Wright's residence, awaiting the appearance of Burnside's automobile in Idaho Falls. In my view, the issuance of the search warrant in advance of the imminent receipt of seizable property was permissible in this case.

The district court's order denying Wright's motion to suppress the evidence is affirmed.

SWANSTROM, Judge, specially concurring.

When officer Ericsson signed the affidavit for the search warrants, the only basis for believing that drugs would be found in Wright's residence was the *anticipated* delivery of a quantity of methamphetamine by Burnside. The magistrate should have directed that the search warrant not be served until the officers had confirmed, by some observable means, that Burnside had likely effected a "delivery" of drugs to Wright's residence.

As noted in the lead opinion, in *People v. Glen, supra,* the New York court cautioned that "the issuing Judge should be satisfied that there is no likelihood that the

---

**4.** A leading treatise, 1 W. LAFAVE, *Search and Seizure,* § 3.7(c) (1978), defines an anticipatory search warrant as "a warrant based upon an affidavit showing probable cause that at some future time (but not presently) certain evidence of crime will be located at a specified place." *Id.* at 698.

warrant will be executed prematurely." *People v. Glen*, 282 N.E.2d at 617. This same concern was voiced by the Supreme Court of Alaska in *Johnson v. State*, 617 P.2d 1117 (1980). The Court there noted:

> For an anticipatory warrant to be valid, there must be probable cause to believe that the items to be seized will be at the place to be searched at the time the warrant is executed, or in other words, that the warrant will not be prematurely executed. *See United States ex rel. Beal v. Skaff*, 418 F.2d 430, 433 (7th Cir.1969); *People v. Glen*, 30 N.Y.2d 252, 331 N.Y.S.2d 656, 659, 282 N.E.2d 614, 617 (1972). In this case, it was reasonable to conclude that the police would not frustrate their efforts to apprehend Raymond Johnson in possession of the drugs by executing the warrant before the package was delivered to him. *See Alvidres v. Superior Court*, 12 Cal.App.3d 575, 579, 90 Cal.Rptr. 682, 686 (1970). We think it most appropriate in anticipatory warrant situations, that the magistrate insert a direction in the search warrant making execution contingent on the happening of an event which evidences probable cause that the item to be seized is in the place to be searched, rather than directing that the warrant be executed immediately or forthwith. As applied to the instant case, the warrant should have stated that execution was authorized only after the police had probable cause to believe that the package had been delivered to Raymond Johnson.

617 P.2d at 1124, footnote 11.

Here, the officers applied for the search warrant on the morning of August 29, 1986. Officer Ericsson told the magistrate that an informant reported Burnside would be returning to Idaho Falls with "more methamphetamine" sometime before September 2. In regard to the requested warrant to search Burnside's vehicle and his person, Officer Ericsson had the following dialogue with the magistrate:

> OFFICER ERICSSON: There's a good chance that he will be coming in during the night to make his deliveries. He drives in from Boise and makes a delivery and will probably leave the same night when he does it.
>
> THE COURT: So if he comes in during the night, you want the right to search him in the night?
>
> OFFICER ERICSSON: Right. If we find him during the night—we don't have any certain place to wait for him to know when he's coming into town, we can only check the residence we know he's going to deliver at. So if it's at nighttime that we locate him, we can get a search team together—

Accordingly, the magistrate authorized a nighttime search of Burnside's vehicle on this warrant.

Officer Ericsson relied upon the same information to obtain a search warrant for Wright's residence. It is obvious that the officers were anticipating that Burnside would be delivering methamphetamines to Wright's residence. Later, at the suppression hearing, Ericsson testified that it was the officers' plan to "wait until Robert Burnside had arrived with the drugs" before searching Wright's residence.

Early in the morning of August 31, officers spotted Burnside and his vehicle in Idaho Falls as Burnside stopped at a restaurant. The vehicle was searched pursuant to the search warrant issued two days earlier. Less than an ounce of methamphetamine was found concealed in the vehicle. *See State v. Burnside*, 115 Idaho 882, 771 P.2d 546 (Ct.App.1989).

I agreed in *Burnside* that the warrant to search the Burnside vehicle was supported by probable cause. The appearance of Burnside and his vehicle in Idaho Falls at the time predicted by the informant gave visible confirmation to the report. This "appearance" was the anticipated event upon which the warrant was implicitly conditioned. The danger that the warrant would be served prematurely, that is, before Burnside made any deliveries, would not affect the probable cause analysis. Obviously, if Burnside was intercepted before he made the anticipated deliveries, there should be a *greater* likelihood of drugs being found in his vehicle.

After searching the Burnside vehicle, the officers executed the search warrant on Wright's residence at approximately 7:30 a.m. Nothing in the record on appeal indicates that the officers had observed Burnside meeting Wright or going to Wright's residence before they initiated the search of Wright's residence. The officers had no "positive" evidence that the anticipated delivery of drugs to Wright's residence had occurred. Following issuance of the search warrant for Wright's residence, the only significant occurrence was Burnside's appearance in Idaho Falls where he and his vehicle were spotted by a policeman at a restaurant at 3:00 a.m. It could be argued that the absence of significant amounts of methamphetamine in Burnside's vehicle when searched was an indication that the anticipated deliveries already had been made. However, this inference arises from "negative" evidence, not positive evidence. Moreover, other inferences, just as reasonable can be drawn from the failure to find the expected large amount of methamphetamine in Burnside's vehicle. In short, probable cause for the search of Wright's residence was lacking both at the time the warrant was issued and at the time it was executed.

■ Although the district court held that there was probable cause to issue the warrant and that the warrant was otherwise valid, the court nevertheless also concluded that even if probable cause was lacking the search ought to be upheld. In this "back-up" ruling the district court analyzed the search under the guidelines of *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), and concluded that the good-faith exception to the exclusionary rule would apply to the search of Wright's residence. On appeal the state has urged this alternate ground for upholding the order denying Wright's motion to suppress. The appellant has not presented any direct refutation of the state's argument.

After reviewing the district court's findings and conclusions I am satisfied that the *Leon* good faith exception to the exclusionary rule was applied properly here. *See,*

*e.g., United States v. Hendricks,* 743 F.2d 653 (9th Cir.1984). Accordingly, I concur in the result to uphold the search in this case.

BURNETT, Judge, specially concurring.

I agree with Judge Swanstrom that the search warrant was improperly issued. Judge Swanstrom's opinion is devoted in part to distinguishing this case from *State v. Burnside,* 115 Idaho 882, 771 P.2d 546 (Ct.App.1989), a case on which I did not sit. Accordingly, I write separately to articulate our underlying concerns about "anticipatory warrants."

Such warrants are not unconstitutional per se. Most jurisdictions allow them, but the courts in those jurisdictions appear to place two restrictions on their issuance and execution. First, they require a particularized showing, in the probable cause affidavit or testimony, that the items sought in the search will be in a specified place at a specified future date or time. The courts often speak in terms of "inevitability" or "imminence" when referring to this requirement. *See, e.g., People v. Glen,* 30 N.Y.2d 252, 331 N.Y.S.2d 656, 282 N.E.2d 614, *cert. denied,* 409 U.S. 849, 93 S.Ct. 58, 34 L.Ed.2d 91 (1972) (upholding an anticipatory warrant to search the person of an individual whose possession of certain evidence was "imminent and all but inevitable"). Second, the courts have declared that the issuing magistrate should specify what particular event(s) will trigger the execution of the warrant. Anticipatory warrants that can be executed at any time have met with disapproval, although they are rarely held invalid on this ground alone. *See, e.g., State v. Gutman,* 670 P.2d 1166 (Alaska Ct.App.1983).

These restrictions serve to minimize three risks inherent in anticipatory warrants. First, there is a risk of premature issuance. Warrants issued upon mere speculation of future criminal activity are plainly invalid. By requiring a particularized showing of probable cause, the courts have endeavored to prevent the search of a

suspect's person or property when the evidence presented to the magistrate indicates only that the suspect is expected to commit a crime in the future. The second risk is the possibility that magistrates will abdicate to police officers an important judicial function—the determination that probable cause exists to believe that the objects to be seized are in the place to be searched. By requiring a particularized showing before the warrant is issued, the magistrate can ensure that he or she—not the officers in the field—will determine when, and whether, there should be a search. Moreover, by specifying an event to trigger the search, the magistrate can prevent the police from weighing evidence obtained *after* the warrant's issuance, in determining for themselves when the search should occur. The third risk, closely related to the other two, is that the warrant will be executed prematurely—that is, when the evidence sought is not yet at the place, or in the possession of the person, to be searched. This risk can be minimized if the magistrate identifies a specific event to trigger the warrant's execution.

The restrictions on anticipatory warrants are illustrated in a sampling of decisions in other jurisdictions. Many involve interception, and subsequent delivery, of packaged contraband by the postal service. For example, in *United States v. Outland,* 476 F.2d 581 (6th Cir.1973), the court upheld a warrant authorizing the search of a suspect's home upon delivery of a package of drugs by the postal service. The court noted that the evidence was known to be in the "hands of the postal inspector" and was to be delivered at the suspect's residence on the following day. Other postal service cases include *United States ex rel. Beal v. Skaff,* 418 F.2d 430 (7th Cir.1969); *United States v. Feldman,* 366 F.Supp. 356 (D.Hawaii 1973); *People v. Shapiro,* 37 Cal.App.3d 1038, 113 Cal.Rptr. 54 (1974); and *State v. Mier,* 147 N.J.Super. 17, 370 A.2d 515 (1977). In each of these cases, the proper place and timing of the search were clear because the evidence was in the process of being delivered by postal employees.

Similarly, in *Johnson v. State,* 617 P.2d 1117 (Alaska 1980), a case noted by Judge Swanstrom, police officers in Alaska had reliable information that a suspect was receiving weekly shipments of drugs from his wife in Seattle. They asked Seattle police to notify them when the next shipment occurred. The Seattle police informed the Alaska officers when the suspect's wife went to an airline ticket counter and presented a package for shipment to Alaska. Based upon this information, the Alaska officers obtained a warrant and executed it after they saw the package being delivered to the suspect's home. The Alaska Supreme Court criticized the issuing magistrate for not specifying the event which would trigger the search. The court nevertheless declared the warrant to be valid, presumably because the likelihood of premature execution was unlikely where the police tracked the package and knew when it had arrived at the suspect's residence. In this respect, *Johnson* is akin to *State v. O'Campo,* 103 Idaho 62, 644 P.2d 985 (Ct.App.1982), where the police knew the suspect would be carrying drugs on an airline flight, and they obtained a warrant to search him upon arrival at the airport.

Other illustrative fact patterns are presented in *State v. Gutman,* 670 P.2d 1166 (Alaska Ct.App.1983) (magistrate specified event triggering execution of warrant), and *Mehrens v. State,* 138 Ariz. 458, 675 P.2d 718 (Ct.App.1983), *cert. denied,* 469 U.S. 870, 105 S.Ct. 219, 83 L.Ed.2d 149 (1984) (triggering event not specified but warrant issued upon information explicitly tying the search to a particular time, place and person). *Compare, e.g., State v. Vitale,* 23 Ariz.App. 37, 530 P.2d 394, 398 (1975) (anticipatory warrant struck down because future event was "a matter of pure speculation"); *United States v. Hendricks,* 743 F.2d 653 (9th Cir.1984), *cert. denied,* 470 U.S. 1006, 105 S.Ct. 1362, 84 L.Ed.2d 382 (1985) (anticipatory warrant to search for package at suspect's home held invalid because delivery at home was uncertain).

In my view, the present case is unlike those in which anticipatory warrants have been upheld. The probable cause affidavit

and accompanying testimony were long on quantity of information depicting Wright's association with a drug dealer, Burnside, but short on quality of information showing that the evidence sought would be at the place (Wright's house) to be searched. Neither did the magistrate specify an event, time, or set of circumstances that would trigger the future execution of the warrant. These deficiencies are further discussed in Judge Swanstrom's opinion, and need not be elaborated here. It suffices to say that the warrant was invalid.

Nevertheless, as Judge Swanstrom has observed, application of the exclusionary rule appears to be barred by *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). In *State v. Schaffer*, 107 Idaho 812, 693 P.2d 458 (Ct.App.1984), we expressed misgivings about *Leon* but held that the so-called "good faith" exception would be applied pursuant to a policy, enunciated by the Idaho Supreme Court, that the search-and-seizure provision of the Idaho Constitution, art. 1, § 17, should be interpreted in conformity with the Fourth Amendment. As recently explained in *State v. Prestwich*, 115 Idaho 317, 766 P.2d 787 (Ct.App.1988), we still feel constrained to follow *Leon*. We will do so unless and until our Supreme Court decides otherwise on independent state constitutional grounds. Accordingly, the district judge's decision in this case, refusing to suppress the evidence seized under the invalid warrant, must be upheld.

SWANSTROM, J., concurs.